577 P.2d 259

**The STATE of Arizona, Appellee,**

v.

**Marvin KILLIAN, Appellant.**

**No. 2 CA–CR 1186.**

Court of Appeals of Arizona,
Division 2.

Feb. 7, 1978.

Rehearing Denied March 15, 1978.

Review Denied April 4, 1978.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Robert C. Brown, Casa Grande, for appellant.

## OPINION

HOWARD, Judge.

This case involves a knifing at the Arizona State Prison. Appellant was found guilty by a jury of the crime of assault with a deadly weapon in violation of A.R.S. § 13–249 and was sentenced to a term of not less than 10 nor more than 15 years in the Arizona State Prison to run consecutively to the sentence which he was currently serving.

Appellant contends the court erred (1) in refusing to dismiss the case for failure to bring appellant to trial within the time limits of Rule 8, Arizona Rules of Criminal Procedure; (2) in refusing to dismiss the case for lack of speedy trial; (3) in refusing to ask appellant's requested voir dire instruction # 21; (4) in permitting a witness to express an opinion; (5) in permitting the prosecutor to examine appellant concerning his prior convictions after he had admitted the prior convictions on direct examination; and (6) in refusing to grant appellant's motion for mistrial.

Appellant was indicted by the grand jury on October 19, 1976. His initial appearance was October 20, 1976 and he was arraigned on October 25, 1976. At arraignment, the trial was set for January 4, 1977.

On January 3, 1977, upon motion of appellant's counsel, the court granted a continuance and reset the case for trial on February 1, 1977. Appellant's counsel subsequently requested another continuance which was granted on January 31, 1977 and the trial was reset for March 1, 1977.

After the last continuance was granted, counsel received the following letter from appellant:

"Mr. Lewis,

Apparently [sic] you misunderstood what I meant in point that I meant for you to go before Judge Mahoney and asked [sic] to be dissmiss [sic] from the handling of my case. I get the impression that you're stalling in this matter so do so immediately. It is evident to me that you do not have my best interest at heart. If need be I'll defend myself but I do not wish for you to handle my case. From the news I get from my friends in your area that you're not qualify [sic] to handle my case. I don't want to demean your abilitie [sic] but niether [sic] do I believe in gambling with my life. Use what ever [sic] reason you like to be withdrawn whatever suits you.

Why do you keep letting them postpone my case? I hope that you're not responsible for these many continuanses [sic]. I never waived my right to a speedy trial and its not possible for you to do so without informing me.

Sincerely,

Marvin Kellin

P.S. Take this action immediately."

On February 23, 1977, appellant's counsel filed a motion to withdraw stating that appellant was dissatisfied with him and contended that he was not being properly represented because he had not contacted or notified appellant concerning continuances filed on appellant's behalf. At this motion, the letter from appellant to his counsel was not presented to the court.

The court granted the motion to withdraw on February 28, 1977 and new counsel was appointed. The trial date of March 1, 1977 was vacated and the matter was reset for trial on March 29, 1977.

On March 28, 1977, appellant was brought before the court in the absence of counsel who was confined to his home by illness and unable to attend the proceedings. At that time the state avowed it was ready to proceed with the trial and appellant was given the option to proceed without counsel or to have the matter continued. The matter was continued. The newly-appointed attorney immediately filed a motion to withdraw because of previous representation of appellant and appellant's expressed dissatisfaction with him in that case. The motion was granted, appellant's present counsel was appointed, and the court ordered counsel and appellant to appear for a trial resetting on April 18, 1977. On that date, counsel for appellant appeared but found that the prison had not transported his client despite the order of the court. The court reset the matter for trial on May 4, 1977. Appellant's counsel immediately informed the court that he could not prepare a major felony case in two weeks and that he could do nothing other than to make an oral motion for a continuance. This motion was granted and the matter was set for trial on May 24, 1977.

On May 17, 1977, appellant's counsel filed a motion to dismiss the case for violation of appellant's right to a speedy trial under Rule 8, Arizona Rules of Criminal Procedure. The motion was denied and the matter was tried to a jury on May 24th and May 25th, 1977.

The record shows that the first continuance of the trial date was granted on the representation of appellant's attorney that he had recently learned of material witnesses who had not been interviewed; that they were incarcerated in the Arizona State Prison and that it was difficult to contact and arrange for interviews with them. In addition, the motion noted that plea negotiations were being conducted and therefore a trial might not be necessary.

The second motion for continuance was based on the grounds that the attorney had not been able to interview all of the witnesses in the state prison because of recent incidents of violence there and it was difficult to arrange for interviews. The motion also stated that the attorney had conflicting trials set on this date; that it had been difficult to rearrange and resolve the scheduling problems and that the plea negotiations were still being conducted.

Testimony at trial showed the following: Appellant and the victim, William Nutter, had originally been cellmates at the state prison. Appellant had a homemade knife concealed in the cell and Nutter, fearing that if the knife were found he would be blamed, made a request to the prison guards that he be moved. The only way he could justify the move was by telling the guards his reason, to-wit that appellant had the knife in the cell. As a result Nutter was moved to another cell.

On October 5, 1976, Nutter went to the hospital to have his eyes checked. Just after he exited the doorway of the hospital someone grabbed him from behind and stabbed him in the back, neck, head, side and lung. Nutter turned around and saw that appellant was his attacker. Within a second after he heard the scuffle, one of the prison guards focused on the two, observed them close together and heard Nutter say, "Killian, why did you do this to me?" Appellant saw the guard observing them and fled. He was shortly apprehended but no weapon was found on him. Although Nutter did not recall seeing more than one person sitting on the benches outside of the hospital, one of the guards testified that there were four or five people sitting there.

Appellant testified that he was standing outside when he saw some person whom he did not know stab Mr. Nutter and walk away. He said he ran because he was afraid he would be blamed for the stabbing. Two of the prisoners who were sitting outside on the benches testified in appellant's behalf. One said that he saw the knifing. He did not know and couldn't describe who did it but he said it was not Killian. The second inmate said he did not observe the stabbing. A third inmate who testified on appellant's behalf stated that he was inside the yard office and did not observe the stabbing. A fourth inmate testified that he had conversed with Nutter some time after the assault. He said that Nutter told him that he did not know who had stabbed him and that he had said appellant's name on the spur of the moment.

Rule 8.2, Arizona Rules of Criminal Procedure provides in part:

"a. All Defendants. Every person against whom an indictment, information or complaint is filed shall be tried by the court having jurisdiction of the offense within 150 days of the arrest or service of summons under Rule 3.1 except for those excluded periods set forth in Rule 8.4 below.

b. Defendants in Custody. Every person held in custody in this state on a criminal charge shall be tried by the court having jurisdiction of the offense within 120 days from the date of his initial appearance before a magistrate on the complaint, indictment, or information, or within 90 days from the date of his arraignment before the trial court, whichever is the lesser.

\*       \*       \*"

Appellant was tried 230 days from the date of his "arrest", 216 days from the date of his initial appearance and 211 days from the date of his arraignment. Rule 8.4(a), Arizona Rules of Criminal Procedure, excludes from the computation of Rule 8.2 time limits, delays occasioned by or on behalf of the accused. The total excludable time in this case counting delays caused by and on appellant's behalf, is 141 days which puts the trial date well within the time limits of Rule 8.2.

It is appellant's position that none of the time excluded because of continuances granted pursuant to motions of his attorneys can be excluded because he was not personally asked by the court whether he consented to these continuances and therefore there was no knowing or intelligent waiver of either his rights under Rule 8.2 or his constitutional right to a speedy trial. He maintains that the time limits under Rule 8.2 grant him a fundamental right; that therefore, before a continuance is granted, the court was required to conduct a hearing in his presence to advise him of his rights under Rule 8.2, his right to waive the rule, and ensure he had discussed the matter with counsel and that no force or threats had been used to induce him to waive the protection of the rule. We do not agree.

. Rule 8.2 does not grant the appellant any "fundamental right" which cannot be waived by his counsel. When representing the accused, counsel stands in the stead of his client. *State v. Contreras,* 112 Ariz. 358, 542 P.2d 17 (1975). As soon as appellant indicated his dissatisfaction with the actions of his first court-appointed attorney, that attorney withdrew. Thereafter, appellant indicated no dissatisfaction with the conduct of his subsequent attorneys. As far as his constitutional right to a speedy trial is concerned, appellant has failed to show any prejudice from the trial delay. *State v. Owens,* 112 Ariz. 223, 540 P.2d 695 (1975).

Appellant contends the court committed reversible error by failing to ask the jury his question # 21 which stated: "If you, after hearing all of the evidence in this case, have a reasonable doubt concerning the defendant's guilt in this matter, will you be willing to vote for acquittal even though you are in a minority as to your fellow jurors?"

The purpose of voir dire examination is to determine the presence or absence of bias and prejudice on the part of the prospective jurors. *State v. Bullock,* 26 Ariz.App. 149,

546 P.2d 1158 (1976); cf. *State v. Riggins,* 111 Ariz. 281, 528 P.2d 625 (1974).

Rule 18.5(d), Arizona Rules of Criminal Procedure, provides in part:

"The court shall conduct the *voir dire* examination, putting to the jurors all appropriate questions requested by counsel. . . . "

The extent of examination under the above rule is left to the sound discretion of the trial judge. *State v. Smith,* 114 Ariz. 415, 561 P.2d 739 (1977); *State v. Riggins,* supra.

■ The record discloses that the court did ask appellant's modified question # 19 which states:

"Will each of you give the State and defendant the benefit of each your judgment in this case."

We believe that appellant's proposed question # 21 was partially covered by his question # 19. In any event, the question was not of such nature that the failure to give it constituted reversible error. *State v. Moreno,* 26 Ariz.App. 178, 547 P.2d 30 (1976).

After eliciting facts from prison guard Romero which showed that no one could have stabbed Nutter and then run back to the benches without being seen by him, the prosecutor asked Romero, over appellant's objection, the following questions and Romero gave the following answers:

"Q. Do you have an opinion as to whether or not anybody else could have stabbed him and made it back to the bench without seeing the movement of them getting back to the bench?

A. Well, I don't think so, because as soon as I heard the noise, you know, a few seconds, I mean a second . . .

Q. So it was just a second after you heard that that you looked?

A. Yes."

■ Appellant contends that the trial court committed reversible error in allowing inadmissible opinion evidence. The history of "the opinion rule" is related in 7 Wigmore On Evidence, 3rd Ed. § 1917. As Wigmore points out, the notion that a lay witness could not express an opinion based upon facts which he personally observed, was an innovation that did not occur in American jurisprudence until the 1800's and has never obtained orthodox standing in Great Britain.

The theory behind the rule as it relates to lay witnesses is stated:

"The true theory, then, of the Opinion rule, in the sense we are here to use, is simply that of the exclusion of supererogatory evidence. It is not that there is any fault to find with the witness himself or the sufficiency of his sources of knowledge or the positiveness of his impression; but simply that his testimony, otherwise unobjectionable, is not needed, is *superfluous.*

Thus the principle of exclusion is in no sense one of Testimonial Qualifications, but one of Auxiliary Policy. . . .

\* \* \* \* \* \*

It simply endeavors to save time and avoid confusing testimony by telling the witness: 'The tribunal is on this subject in possession of the same materials of information as yourself; thus, as you can add nothing to our materials for judgment, your further testimony is unnecessary, and merely cumbers the proceedings.' " (Emphasis in original) Wigmore, supra, § 1918, pp. 10–11.

Prior to September 1, 1977, the effective date of our Rules of Evidence, the rule as to the admissibility of the opinion of a lay witness was as set forth in Wigmore:

" . . . Such a witness' inferences are inadmissible when the jury can be put into a position of equal vantage for drawing them,—in other words, when *by the mere words and gestures* of the witness the data he has observed can be so *reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion.*" (Emphasis in original) Wigmore, supra, § 1924, p. 22.[1]

Wigmore criticizes the rule, not because of its wording but rather in its application:

---

1. See *Lee Moor Contracting Company v. Blanton,* 49 Ariz. 130, 65 P.2d 35 (1937) where this rule is expressed in another manner.

" . . . In the vast majority of rulings of exclusion, the data observed by the witness could not, in any liberal and accurate view, be really reproduced to the jury by the witness' words and gestures. The error of the judges consists in giving too much credit to the possibility of such reproduction. What is chiefly wrong is by no means the test itself, but the illiberal and quibbling application of it." Wigmore, supra, § 1924, p. 23.

Much of the risk of the technical use of the "opinion rule" has been eliminated by Rule 701, Rules of Evidence, which states:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Since the new rules of evidence were not in effect at the time of the trial of this case, we will apply the rule set forth in *Lee Moor Contracting Company v. Blanton,* supra. Assuming arguendo that the foundation for admission of this opinion testimony did not exist, we find no reversible error. The basis for rejection of this type of testimony is not that the witness is not qualified to give an opinion but rather that it is superfluous; that the jury is just as capable of making an inference from the facts as is the witness. From Mr. Romero's testimony it is obvious that he would have seen someone heading towards the bench had such a person existed. His opinion added nothing to the rest of his testimony. Furthermore, we are unable to see any prejudice arising from the answer to the question since Killian himself testified that he saw the man who did the stabbing walk down a sidewalk and go towards the yard office. Killian made no claim that the assailant went back to the benches.

On direct examination appellant told the jury that he was convicted of armed robbery in 1972 and car theft in 1968. He was not asked where those offenses occurred. The prosecutor was allowed to ask when and where these prior felonies were committed, over objection of defense counsel. Appellant claims this was reversible error. We do not agree. If the accused affirmatively indicates he has been previously convicted of a felony he may be asked the number of those convictions, the nature of the crimes and when and where those crimes were committed. *State v. Polan,* 78 Ariz. 253, 278 P.2d 432 (1954); *State v. Sorrell,* 85 Ariz. 173, 333 P.2d 1081 (1959).

Lastly, appellant claims the trial court erred in not granting a mistrial because of prosecutorial misconduct during defense counsel's closing argument to the jury. We do not agree. The prosecutor made an objection during closing argument and after the court ruled, the prosecutor re-interrupted counsel's closing argument with another objection. This was the basis for the motion for mistrial. Continuous objections or interruptions by the state may become such a vexatious impediment to the course of the trial that they amount to prosecutorial misconduct and deny the accused a fair trial, *State v. Moore,* 108 Ariz. 215, 495 P.2d 445 (1972). That is not the case here.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.