786 P.2d 998

JV–111701, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA; Honorable Thomas Jacobs, a judge thereof, Respondent Judge,

STATE of Arizona, Real Party
in Interest.

No. 1 CA–SA 88–259.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 5, 1989.

Reconsideration Denied Nov. 15, 1989.

Review Denied Feb. 26, 1990.

148

Dean W. Trebesch, Maricopa County Public Defender by Ellen Edge Katz, Deputy Public Defender, Phoenix, for petitioner.

Richard M. Romley, Maricopa County Atty. by William F. Molner, Deputy County Atty., Phoenix, for real party in interest.

## OPINION

LEVI RAY HAIRE, Judge, Retired.

Petitioner, the juvenile in Maricopa County Juvenile Action No. JV–111701, raises three issues for our review in this petition for special action. He contends that Rule 3, Rules of Procedure for the Juvenile Court, 17B A.R.S. (Juvenile Rule 3), is unconstitutional because: (1) it fails to insure that a juvenile will receive a timely initial appearance before a judicial officer where the court informs him of his constitutional rights, the charges against him, and makes a determination regarding probable cause and pretrial detention; (2) the rule employs an impermissibly low standard of proof for determining whether a juvenile should be detained pending adjudication; and, (3) the rule permits the court to detain a juvenile without making specific findings of fact regarding the necessity for continued pretrial detention.

## PROCEDURAL HISTORY

The juvenile was detained for allegedly delinquent behavior on Wednesday evening, November 23, 1988. The juvenile remained in custody and no action was taken on the following day, Thursday, Thanksgiving day. On Friday a petition alleging delinquency was filed. The juvenile remained in custody through the weekend of November 26 and 27. On Monday the juvenile appeared, for the first time, before the Juvenile Court for a combined advisory and detention hearing. Thus the juvenile was detained for five days before a judge advised him of the charges against him and of his constitutional rights at the combined advisory and detention hearing.

At the combined hearing the judge determined that there was probable cause to believe that the juvenile had committed the delinquent acts alleged in the petition, and that there was reasonable cause to continue the juvenile's detention pending adjudication. The judge did not make detailed factual findings supporting his decision to continue the pretrial detention of the juvenile, other than in the conclusory language set forth in Juvenile Rule 3(b).

The pertinent provisions of Juvenile Rule 3 provide:

"(a) . . .

"(b) A child shall be detained only if there is probable cause to believe that the child committed the acts alleged in the petition, and there is reasonable cause to believe:

"(1) That otherwise he will not be present at any hearing; or

"(2) That he is likely to commit an offense injurious to himself or others; or

"(3) That he must be held for another jurisdiction; or

"(4) That the interests of the child or the public require custodial protection.

"(c) . . .

"(d) No child shall be held in detention for more than 24 hours, excluding Saturdays, Sundays and holidays, unless a petition alleging his delinquent conduct has been filed; and no child shall be held longer than 24 hours, excluding Saturdays, Sundays and holidays, after the filing of said petition unless so ordered by the court after hearing."

## SPECIAL ACTION JURISDICTION

■ We have accepted special action jurisdiction in this proceeding because the issues raised are of substantial importance and will continuously affect a large number of juveniles.[1] The issues raised concern the constitutionality of a juvenile rule promulgated by the Arizona Supreme Court, and present pure issues of law.[2] Because the issues raised involve pretrial detention procedures, principles of mootness would normally preclude appellate review. *See, e.g., Schall v. Martin,* 467 U.S. 253, 256, n. 3, 104 S.Ct. 2403, 2405, n. 3, 81 L.Ed.2d 207, 212, n. 3 (1984) *citing Gerstein v. Pugh,* 420 U.S. 103, 110, n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975):

> "Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.' "

Accordingly, special action appellate review is appropriate despite the apparent mootness of the issues in this particular case. *See Matter of King,* 150 Ariz. 206, 722 P.2d 374 (App.1986).

1. There are presently pending before this court six other special action petitions raising the same issues as those raised in this proceeding.

2. The court of appeals is authorized to determine the validity and constitutionality of rules promulgated by the Arizona Supreme Court. *State v. Meek,* 9 Ariz.App. 149, 450 P.2d 115 (1969).

## INITIAL HEARING

The juvenile's primary contention is that the provisions in Juvenile Rule 3(d) allowing the exclusion of weekends and holidays before an initial hearing is held, are unconstitutional because the procedure deprives a juvenile of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

In this case, because Juvenile Rule 3(d) allows the exclusion of Saturdays, Sundays and holidays, the juvenile was not brought before a judge until the fifth day after his arrest. Prior to that time, he had not been advised by the court of the charges against him, of his right to counsel, nor of his other constitutional rights. Likewise, prior to that time there had been no judicial determination that there was reasonable cause to detain the juvenile pending adjudication, nor a determination that there was probable cause to believe that the juvenile had committed the delinquent acts charged against him.

The juvenile contrasts the treatment accorded juveniles under Juvenile Rule 3(d) with that provided for adults in Rule 4, Arizona Rules of Criminal Procedure. Under Criminal Rule 4.1(a), an adult arrested on criminal charges must be taken "before a magistrate without unnecessary delay." If the adult is not brought before a magistrate within 24 hours after arrest, he must be immediately released. At the initial appearance before the magistrate, the adult is informed of the charges against him, informed of his rights to counsel, given appointed counsel if appropriate, and the magistrate determines and sets the conditions governing the release of the defendant pending trial. *See* Criminal Rule 4.2(a).[3] In computing the 24 hours allowed

3. When a felony charge is prosecuted by complaint rather than by grand jury indictment, at the initial hearing a defendant in custody is also advised of his right to have probable cause determined at a preliminary hearing. The preliminary hearing is to be held within ten days unless the in-custody defendant demands an immediate hearing. In that event the magistrate must commence the hearing "with only such delay as is necessary to secure the attendance of

for an initial appearance under Criminal Rule 4.1(a), the exclusion of Saturdays, Sundays and holidays is *not* authorized. Rather, the 24 hour initial appearance limitation for an adult applies even though the adult might have been arrested on a holiday or during a weekend, or on the day preceding such a holiday or weekend.

The juvenile contends that the extended detention allowed by Juvenile Rule 3(d) without affording judicial review violates his Fourth Amendment rights and denies him due process and equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. Because we find merit in the juvenile's equal protection arguments, we need not address his Fourth Amendment and due process arguments.

### EQUAL PROTECTION

As previously noted, under the circumstances involved in this case, Juvenile Rule 3(d) permits the state to detain a juvenile for five days before advising the juvenile of applicable constitutional rights and of the pending delinquency charges. In contrast, an adult must be taken before a magistrate within 24 hours of the arrest, and, at this initial appearance, the adult must be informed of the pending charges, the right to counsel and the right to remain silent, an attorney must be appointed for an indigent adult if requested, and the court must determine the conditions for the adult's release. Criminal Rule 4.2(a). Thus, there is a substantial difference between the pretrial detention treatment afforded juveniles and that afforded to adults detained by the state.

The Fourteenth Amendment's due process protections generally apply to juveniles as well as to adults. *See Application of Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527, 538 (1967) (juvenile entitled to appropriate notice of charges, to counsel, to confront and cross-examine wit-

nesses, and to privilege against self-incrimination); *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy principles are applicable to juvenile proceedings); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (due process requires proof beyond a reasonable doubt in delinquency matters). However, due process does not necessarily require that the state always treat juveniles in the same manner as adults. *Schall v. Martin*, 467 U.S. at 263, 104 S.Ct. at 2409, 81 L.Ed.2d at 216 (1984). Under a due process analysis it has been held that juveniles are not entitled to certain protections constitutionally guaranteed to adults. *See, e.g., McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (juveniles not entitled to jury trial). Similarly, a statutory scheme that allows the imposition of a longer penalty on a juvenile than would occur if the charges were against an adult does not violate equal protection standards. *Appeal, in Maricopa County Juvenile No. J–86509*, 124 Ariz. 377, 604 P.2d 641 (1979), *cert. denied McGruder v. Arizona*, 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 245 (1980). *See also, Appeal in Maricopa County Juvenile Action No.J–81405–S*, 122 Ariz. 252, 594 P.2d 506 (1979) (prosecution of juvenile on petition rather than by complaint does not violate equal protection standards); *In re Maricopa County Juvenile Action No. J–72804*, 18 Ariz.App. 560, 504 P.2d 501 (1972) (difference in appeal procedures for juveniles does not violate equal protection standards).

Against this background, the issue presented in this case is whether the disparate treatment of juveniles and adults, engendered by the differences in the applicable rules of procedure, is a difference that violates the equal protection clause of the United States Constitution.

In order to survive an equal protection challenge, a state law [4] must, at a minimum

---

counsel, court reporter and necessary witnesses." *See* Criminal Rules 4.2(c), 5.1(a) and 5.1(d).

**4.** The state action at issue here is a rule promulgated by the Arizona Supreme Court, rather than a statute enacted by the legislature. However, the equal protection clause is aimed at all official actions, not just those of the legislature. *Columbus Board of Education v. Penick*, 443

be rationally related to a legitimate government interest. *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). If the questioned law involves a suspect classification such as race or religion, or impinges on a fundamental right, then a strict scrutiny standard must be applied, and the law will not be upheld unless necessary to serve a compelling state interest. *See id. Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). If the law discriminates based on gender or illegitimacy, an intermediate level of scrutiny is required and the law will not be upheld unless it bears a substantial relationship to an important government interest. *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

■ Because the rule at issue here does not involve gender or illegitimacy, an intermediate level of scrutiny is not appropriate. The issue involves a classification based on age, which generally is not considered a suspect classification. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The Arizona cases involving juvenile equal protection issues previously cited in this opinion, have applied the reasonable or rational basis test without discussing whether a fundamental right was involved. Likewise, we need not decide whether the disparate treatment afforded juveniles impinges on a fundamental right requiring strict scrutiny because we find that the disparity in treatment bears no rational relationship to a legitimate government interest, and, therefore, fails to withstand even a minimum level of scrutiny.

■ A classification is rationally related to a legitimate government interest if (1) the challenged legislation has a legitimate purpose; and, (2) it is reasonable to believe that the classification will promote that purpose. *Western and Southern Life Insurance v. State Board of Equalization of California*, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). The state asserts that it has an interest in protecting the community from crime. The state further argues

that it has an interest in preserving and promoting the welfare of minors. The state, however, fails to make any contention that the unequal treatment of detained juveniles, mandated by Juvenile Rule 3(d), is rationally related to serving these admittedly legitimate state interests. Nor can we conceive of any possible relationship between the disparity of treatment and the state interests it is intended to promote.

The state has an interest in protecting the community from adult crime as well as juvenile crime, therefore this asserted interest does not furnish a rational basis for the difference in treatment of juveniles. After the juvenile has been taken into custody, he cannot commit any additional crime. Preventing the juvenile from having a prompt judicial hearing, where a judge informs him of the charges against him and of his constitutional rights, and where the court can determine whether continued detention is necessary, bears no rational relationship to protecting the community from crime.

The state also has an interest in preserving and promoting the welfare of minors. This interest is served, as a whole, by the juvenile court system. However, we fail to see any rational relationship between delaying the juvenile's initial judicial appearance and preserving and promoting the welfare of a juvenile. The state has not argued, nor have we seen any evidence, that the pre-judicial detention in any way benefits a juvenile. To the contrary, this detention may be harmful to a juvenile when detention is subsequently found to have been unnecessary. Additionally, we can conceive of no rational basis why a juvenile, like an adult, should not be promptly told of the charges against him and of the constitutional protections available to him.

Because we find no rational basis for the disparity in treatment afforded juveniles pursuant to Juvenile Rule 3(d), we hold that its provisions allowing the exclusion of holidays, Saturdays and Sundays in computing the detention periods permitted pri-

U.S. 449, 457, n. 5, 99 S.Ct. 2941, 2946, n. 5, 61    L.Ed.2d 666, 676, n. 5 (1979).

or to a juvenile's initial appearance before a judge violates the juvenile's Fourteenth Amendment rights to equal protection of the law. Accordingly, we need not consider the juvenile's contention that permitting such exclusions also violates his Fourth Amendment and due process rights.

## STANDARD OF PROOF

Next we address the question of whether the "reasonable cause" standard of proof imposed by Rule 3(b) to determine whether a juvenile should be detained pending adjudication of the charges against him, is impermissibly low.

Juvenile Rule 3(b) provides that a juvenile may be detained only if there is *probable cause* to believe that the juvenile committed the delinquent acts and there is *reasonable cause* to believe that one of four enumerated circumstances exists which warrants keeping the juvenile in detention. The juvenile contends that the decision to detain a juvenile should be made only upon clear and convincing evidence that detention is necessary. He argues that applying the factors established in *Mathews v. Eldridge* to determine whether a standard of proof satisfies due process, indicates that "reasonable cause" is an impermissibly low standard of proof to support a decision that a juvenile should be deprived of his liberty. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (resolution of due process requirements involves a consideration of: 1) the private interest affected; 2) the risk of an erroneous deprivation of that interest through the procedures involved; and, 3) the governmental interest involved.) *See also Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

The United States Supreme Court has addressed this issue and has held that "probable cause" that the suspect committed the offense is the correct standard of proof for extended pretrial detention following arrest. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54, 65 (1975). The court noted that the probable cause standard represents "a necessary accommodation between the individual's right to liberty and the State's duty to control crime," *id.* at 112, 95 S.Ct. at 862, 43 L.Ed.2d at 64, and that the determination of probable cause as a prerequisite to an extended restraint of liberty following arrest does not require "the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands...." *Id.* at 121, 95 S.Ct. at 867, 43 L.Ed.2d at 69. Thus, the court has considered the *Mathews v. Eldridge* criteria and has decided that the "probable cause" standard satisfies due process in the context of pretrial detention.

■ We recognize that the standard of proof questioned by the juvenile in this case is Juvenile Rule 3(b)'s "reasonable cause" standard rather than its probable cause standard. However, in considering standards of proof imposed by the juvenile rules for a transfer hearing, the Arizona Supreme Court has held that the phrase "reasonable grounds" refers to the same standard of proof as probable cause. *Appeal in Maricopa County Juvenile Action No. J–84984,* 138 Ariz. 282, 674 P.2d 836 (1983). Similarly, we equate "reasonable cause" to a probable cause standard and hold that the standard complies with due process requirements.

## FINDINGS OF FACT

The juvenile's final argument is that the juvenile rules do not contain a requirement that the judge make specific findings of fact to support the decision to detain the juvenile pending adjudication. He argues that the findings required by Juvenile Rule 3(b) do not give him sufficient notice of the facts determined by the judge in arriving at his decision that preadjudication detention was appropriate.

■ Juvenile Rule 3(b) provides that a juvenile may not be detained unless the court finds that there is reasonable cause to believe that detention is required because: 1) without it a juvenile will not attend any hearings; or, 2) without it a juvenile will commit an offense; or, 3) the juvenile is wanted in another jurisdiction; or, 4) the interests of the juvenile or the public require detention. These findings,

when viewed in conjunction with the record, are sufficient to permit meaningful review of the juvenile court's decision by an appellate court. *See Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). These findings are also sufficiently specific to provide a juvenile with notice of the cause of his detention. The juvenile may attack the necessity for detention if the record does not support the judge's determination.

## CONCLUSION

 We hold that the provisions of Rule 3(d), Rules of Procedure for the Juvenile Court, permitting the exclusion of Saturdays, Sundays and holidays are unconstitutional because the juvenile is deprived of equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution. We deny relief here because with the passage of time the question has become moot. *See Gerstein v. Pugh*, 420 U.S. at 119, 95 S.Ct. at 866, 43 L.Ed.2d at 68 ("[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.")

We additionally hold that Juvenile Rule 3(b)'s "reasonable cause" standard of proof satisfies due process requirements and that the rule's fact-finding provisions are not constitutionally deficient. Therefore we deny relief on those issues.

CONTRERAS, P.J., and EUBANK, J., concur.

*Note:* Retired Judge LEVI RAY HAIRE was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.