810 P.2d 589

In the Matter of the APPEALS IN MARI-COPA COUNTY JUVENILE ACTIONS NO. JV119590 AND NO. JV118201.

Nos. 1 CA–JUV 90–006, 1 CA–JUV 90–007.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 6, 1990.

Review Denied May 21, 1991.

Richard M. Romley, Maricopa County Atty. by Jerry G. Landau and Susan M. Hennesy, Deputy County Attys., Phoenix, for appellant.

Dean W. Trebesch, Maricopa County Public Defender by David Katz, Deputy Public Defender, Phoenix, and Decker & Woods by Rex H. Decker, Chandler, for appellees Juvenile.

## OPINION

TAYLOR, Presiding Judge.

### FACTS

These juvenile cases have been consolidated for purposes of this appeal. Both juveniles were arrested and charged with driving while intoxicated and driving with a blood alcohol content in excess of .10 percent, both commonly referred to as DUI. A.R.S. § 28–692. Relying upon *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986), the juvenile court judge in each case dismissed the respective charges with prejudice due to the state's failure to try the juveniles within one hundred fifty days of arrest. The state claims that *Hinson* ought not apply to juvenile DUI proceedings. We agree.

The procedural facts of each case are set forth separately.

### JV 119590

In this case, the juvenile was arrested at the scene of a one-car accident on June 18, 1989. He was referred to the Juvenile Court Probation Department on July 25, 1989, which, on August 7, 1989, recommended court intervention. Formal charges were filed against the juvenile on August 29, 1989, and a DUI petition was filed on October 26, 1989. Without the state's knowledge, the advisory hearing scheduled for November 17, 1989, was vacated and reset to December 1, 1989. On December 1, 1989, a public defender was appointed to represent the juvenile. Prior to that time, the juvenile was unrepresented by counsel. Trial date of January 25, 1990, was set and a preadjudication conference, set for January 11, 1990, was vacated. Defense counsel filed a motion to dismiss on December 21, 1990, for not adjudicating the juvenile within one hundred fifty days of arrest as required by *Hinson*. The court dismissed the state's case, ruling that the time limits set by Rule 8, Arizona Rules of Criminal Procedure, as interpreted by *Hinson*, should apply to juvenile DUI cases. We note that one hundred sixty six days elapsed from the date of the arrest to December 1, 1989, the date of the advisory hearing and appointment of counsel. Even excluding the thirteen days due to the diversion process at the juvenile probation department, more than one hundred fifty days had elapsed from the date of arrest.

### JV 118201

The juvenile in this case was arrested on May 27, 1989, after being involved in a hit-and-run accident. A DUI petition was filed against the juvenile on August 8, 1989. A pre-adjudication hearing was held on September 22, 1989, one hundred nineteen days after arrest, and his trial was scheduled for November 20, 1989, more than one hundred fifty days after the arrest. It was later continued to January 27, 1990. The juvenile's defense attorney, who was appointed on July 25, 1989, after the public defender's office withdrew, never informed the court of the possible *Hinson* problem.

On October 31, 1989, the juvenile filed a motion to dismiss based on the failure to try him within one hundred fifty days of arrest under Rule 8.2(a) and *Hinson*. The juvenile court judge dismissed the case with prejudice, citing the juvenile's right to a speedy trial under the sixth and fourteenth amendments to the United States Constitution, and the juvenile's right to equal protection of the law, indirectly applying *Hinson*.

### WAIVER

We first consider the issue of waiver. The state urges that counsel for the juvenile in JV118201 intentionally waited until one hundred fifty days had passed after arrest and then moved for dismissal under *Hinson*. The state deems such conduct to waive the motion to dismiss, thus also waiving the right to adjudication within one hundred fifty days of arrest.

■ A waiver is a voluntary relinquishment of a known right and, without knowledge of a right, there can be no waiver. *State v. Davis*, 108 Ariz. 335, 337, 498 P.2d 202, 204 (1972).

■ It is difficult to perceive how the juvenile can be charged with waiving a right that had not yet been recognized nor announced. As stated above, the waiver must be of a *known* right. Whatever merit there may be for the extension of *Hinson* to juvenile proceedings, until that rule is clearly announced, it strains concepts of fundamental fairness to suggest that the unsophisticated mind of a juvenile should anticipate such a rule.

There is nothing in the record to suggest that the juvenile knew of Rule 8, knew of *Hinson,* or sought to take advantage of any application of *Hinson* to his case. Whatever the motives of counsel, the juvenile is not bound by his attorney's deficient act. *State v. Berlat,* 146 Ariz. 505, 510, 707 P.2d 303, 308 (1985).

## APPLICATION OF RULES OF CRIMINAL PROCEDURE

■ The Rules of Criminal Procedure do not apply in juvenile delinquency proceedings. *E.g., In the Matter of Maricopa County Juvenile Action No. J–86715,* 122 Ariz. 300, 303, 594 P.2d 554, 557 (App. 1979); *In the Matter of Yavapai County Juvenile Action No. 7707,* 25 Ariz.App. 397, 399, 543 P.2d 1154, 1156 (1975). It is true that certain rules have been held to apply to juveniles. However, each of those rules was applied as a shield to give some constitutional protection to the juvenile, i.e., Rule 11 to determine competency, *State ex rel. Dandoy v. Superior Court,* 127 Ariz. 184, 187–88, 619 P.2d 12, 15–16 (1980); Rule 4 to compel prompt initial appearance, *JV–111701 v. Superior Court,* 163 Ariz. 147, 150–152, 786 P.2d 998, 1001–3 (App.1989); Rule 17 requiring compliance with standards for accepting admissions of guilt, *Juvenile No. J–86715,* 122 Ariz. at 302–03, 594 P.2d at 556–57; and Rule 27 and case law pertaining to notice and opportunity to contest modification of terms of probation, *In the Matter of Pinal County Juvenile Action No. J–169,* 131 Ariz. 187, 189, 639 P.2d 377, 379 (App. 1981).

The application of those rules to juveniles charged with the commission of an offense is premised on concepts of due process, equal protection and fairness and not upon a belief that the rules governing prosecution of adults should apply. The Rules of Criminal Procedure only serve as a familiar vehicle to achieve due process ends. *See e.g., State ex rel. Dandoy v. Superior Court,* 127 Ariz. at 187, 619 P.2d at 15 (a juvenile must be accorded due process protections in the adjudication of charges against him). As was emphasized to the juvenile courts of this state in *Application of Gault,* "[t]he hearing must measure up to the essentials of due process and fair treatment." 387 U.S. 1, 30, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527, 548 (1967).

■ The recognition of these Constitutional guarantees does not justify a conclusion that the *Hinson* rule applies to juveniles. No basic rights of the juvenile are protected by this extension of *Hinson.* The absence of Constitutional considerations in deciding *Hinson* was emphasized by the Arizona Supreme Court: "We expressly stated that *Hinson* was not being decided on the Constitutional grounds of pre-indictment delay but was, instead, being decided strictly as a matter of application of Rule 8.2(a), Arizona Rules of Criminal Procedure." *Wood v. Goodfarb,* 155 Ariz. 32, 33, 745 P.2d 90, 91 (1987).

Counsel for the juveniles suggest that the *Hinson* rationale applies to juvenile DUI cases; therefore, the time limits of Rule 8 would apply to such cases. We would suggest that the reverse is a more correct analysis, that is, Rule 8 does not apply to juvenile DUI cases; therefore, *Hinson* does not apply. As stated by Division II of this court: "Unlike the criminal rules, the juvenile rules do not establish hard and fast guidelines for delinquency proceedings...." *Matter of Cochise County Juvenile Action No. D.L. 89–00020,* 161 Ariz. 154, 156, 776 P.2d 1080, 1082 (App.1989). In the absence of due process and equal protection considerations, the Rules of Criminal Procedure, including Rule 8, just do not apply to juvenile proceedings.

## APPLICATION OF HINSON

Our major disagreement with the announcement of a *"Hinson* Junior" rule arises not from a concern over the appropriateness of strict time rules for juveniles, but from the manner of the creation of this rule. Indeed, there are cogent arguments for a rule requiring the expeditious adjudication and disposition of most juvenile delinquency petitions, especially those alleging substance abuse. The juvenile judge in JV118201 set forth in his order of dismissal many of the advantages accruing to the juvenile and society by the swift resolution of juvenile cases.[1] These reasons suggest that even a five-month delay in juvenile prosecutions is undesirable.

### Rule–Making Power

We are mindful of the lack of rule-making power in this court. Of the entities that might be called upon to confront this issue, only this court lacks specific rule-making power in juvenile matters. Pursuant to 17B A.R.S. Juvenile Court Rules of Procedure, Rule 23,[2] the Maricopa County Juvenile Court has the power to enact rules, subject to approval of the Supreme Court. The Supreme Court is empowered by virtue of article VI, section 5 of the Arizona Constitution[3] to implement rules for all courts, including juvenile courts. *Matter of Maricopa County Juvenile Action No. J–84536–S,* 126 Ariz. 546, 547, 617 P.2d 54, 55 (1979); *Maricopa County Appeal No. J–68100 v. Haire,* 107 Ariz. 309, 311, 486 P.2d 791, 793 (1971). The legislature, if it perceives a need for corrective measures, may act within the bounds of its authority. While this lack of rule-making power does not prevent us from declaring the law as we perceive it to be, or as we perceive it should logically be extended, it does suggest that we proceed with caution into those areas where others have been given specific rule-making power.

We have before us two cases from Maricopa County. We have no evidence in the record that tardy prosecution of juvenile DUI cases are a problem in Maricopa County or in other counties. From this meager record, we are asked to fashion a rule that impacts upon juvenile courts throughout most of the state. Excluded from having input into this decision are parents, child behavior specialists, the presiding juvenile judge of Maricopa County, other juvenile judges and juvenile court personnel, the collective defense bar, other prosecutors, law enforcement personnel and the public, which has a significant interest in the disposition of both juvenile and DUI matters.

As set forth previously, Rule 23 of the Arizona Rules of Procedure for the Juvenile Courts provides that "[t]he juvenile court of each county may ... make ... rules governing *its* practice ... subject to approval of the Supreme Court" (emphasis supplied). The value of this rule is that, if Maricopa County has a problem of tardy prosecution of its juvenile cases, the Maricopa County Juvenile Court, subject to Supreme Court approval, can devise a rule to address its problems in processing its juveniles in its courts. Juvenile courts in other counties would not be bound by such a rule and its results. As an example of the exercise of this authority, the Pima County

---

1. [An extended delay] increases the likelihood of diminishing memories, absence of witnesses, and loss or destruction of evidence needed to prove a case. A speedy trial is essential to protect against undue and oppressive incarceration prior to trial, and to minimize anxiety and concern accompanying public accusation.... Delay in juvenile cases, in addition, often affects the juvenile's relationships with peer groups, school officials, and other adult authorities. A lengthy delay between the offense and the imposition of disposition is likely to be detrimental to the youth's rehabilitation.

2. Rule 23, Arizona Rules of Procedure for the Juvenile Court:

The juvenile court of each county may from time to time make and amend rules governing its practice not inconsistent with these rules, subject to approval by the Supreme Court. In all cases not provided for by rules, the juvenile court may regulate its practice in any manner not inconsistent with these rules or such local rules.

3. Arizona Constitution article VI, § 5:

The Supreme Court shall have:

.  .  .  .  .

5. Power to make rules relative to all procedural matters in any court.

Juvenile Court has enacted local rules [4] providing for filing a petition no later than thirty days after receipt of a complaint, adjudicatory hearing within fifteen days after filing if the child is detained and within thirty days if not. Disposition must occur within fifteen days of adjudication if in custody and within thirty days if not. These rules apply to all delinquency proceedings, not just DUI cases. Under Rule 23, each juvenile court may fashion such rules as best meets its needs and case management goals. In the matters before us, the Maricopa County Juvenile Court did not make the rule; the Supreme Court has not approved the rule, and this court does not possess the power to enact nor approve such a rule.

If we could read in *Hinson* and its progeny an intention on the part of the Supreme Court to extend the rule to juveniles, we believe this court would have the authority to further that intent. However, the juveniles have pointed to no language of the court manifesting such an intention. In fact, caution in extending *Hinson* into any new areas is indicated by mention in the special concurrence of Justice Moeller in *State ex rel. Romley v. Superior Court,* 162 Ariz. 302, 306, 783 P.2d 241, 245 (1989), of a "committee of knowledgeable individuals to study problems inherent to DUI cases, including *Hinson* and its impact." This suggests that even the wisdom of *Hinson* may be the subject of re-evaluation.

*Equal Protection*

In JV 118201, the court premised its order of dismissal upon equal protection considerations, holding that "[t]here is no rational basis for providing an adult defendant the protection of a strict per se prejudice rule under *Hinson,* and failing to provide the same standard to a juvenile...."

If the purpose of *Hinson* was to extend protection to the accused, we would agree with this statement. The *Hinson* court, however, after finding the lack of diligence on the part of prosecutors "intolerable," announced the *Hinson* rule as "the only means this court has to ensure that the intent of the legislature is followed." It was not the intent of the court to offer special protection to drunk drivers.

The Maricopa County Juvenile Court has other means of assuring the prompt prosecution of juvenile DUI cases. It can enact rules similar to those of Pima County. It can schedule juvenile matters for timely hearing and it can, if applicable, apply A.R.S. 11–534 [5] to assure the participation of the prosecutor.

Even if the equal protection argument is considered, an adequate distinction exists for different treatment of adult and juvenile DUI cases. As the Supreme Court has stated:

> We believe that the difference in classification between adults and juveniles is not only a reasonable one but one which meets the vital interest of the state in protecting children. We are satisfied that the separate system of rehabilitation provided by the statutes is a legitimate means to carry out the state's need to protect and control children.

*In the Matter of the Appeal, in Maricopa County Juvenile No. J–86509,* 124 Ariz. 377, 379, 604 P.2d 641, 643 (1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 245 (1980).

The juvenile in JV 118201 was processed on other charges contemporaneously with the dismissal of the DUI charges. The rehabilitative value of the juvenile court is strikingly demonstrated in the following passage from the Disposition Report of that companion case.

---

**4.** *See* 17B A.R.S. Local Rules of Proc. for the Pima County Juv.Ct., Rule IV–VI.

**5.** Arizona Revised Statutes § 11–534:
Effect of failure of county attorney to attend court:
  If the county attorney fails to attend in person, or by deputy, any session of the superior court at which a criminal action is to be tried, the court may designate some other person to perform the duties of county attorney during his absence from court. The person so designated shall receive a reasonable compensation, to be fixed by the court and paid by the county treasurer, and the amount thereof shall be deducted from the salary of the county attorney.

When discussing substance abuse, the juvenile indicates that he has experimented with marijuana, cocaine, speed, and has tried paint sniffing as well. Since taking the classes, the juvenile indicates that he is much more educationally aware of the consequences and the physical damage that can occur when involving himself with drugs and alcohol. Again, the juvenile states that the temptation is always there, but has been able to avoid it since entering the T.A.S.C. Program. ·

The juvenile at this time is waiting to be placed at the Maricopa County Skill Center as a machinist. The juvenile's vocational counselor indicates that the juvenile's overall attitude and behavior at the program has been excellent.

The value of parental input before fashioning a rule respecting their children's cases is gleaned from the following passage from the same report:

> Both parents indicate that they were concerned with their son's past behavior and feel that the court's intervention has been very instrumental in straightening [the juvenile's] life out. Again, the mother feels that [the juvenile] was completely out of control and was hanging around other kids from the neighborhood who were categorized as gang members. Since his involvement with the Juvenile Court, the mother states that [the juvenile] seems to be more in tune to living a cleaner and safer life than he had demonstrated in the past.

In summary, we do not read in *Hinson* any legal basis for extending its holding to juvenile matters. Any perceived deficiencies of the Maricopa County juvenile procedures can best be addressed by the Maricopa County Juvenile Court under Rule 23, Juv.Ct.Rules of Proc. If new procedures should have statewide application, the Supreme Court can exercise its rule-making authority. Under either procedure, a cautious, deliberate review with input from all interested parties would most likely assure a more suitable rule.

For the foregoing reasons, the orders of dismissal are reversed and the matters are remanded for further proceedings.

EUBANK, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent because I think the majority does not give sufficient weight to the policy and purpose of *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986). That case was designed to put an end to a specific abuse. The state, overburdened, had fallen into the practice of violating Rule 8 trial deadlines in DUI cases by dismissing cases without prejudice and re-filing them long after the defendant had originally been arrested or summoned to answer. Our supreme court said that if the state did not comply with Rule 8, DUI cases must be dismissed with prejudice. It specifically adopted this method to ensure that the legislative intent of removing drunk drivers from the highways was implemented. *Id.* at 311, 723 P.2d at 660.

This policy of the timely removal of drunk drivers from the roads is a strong one, and admits of no distinction between juveniles and adults. Nor is there any ambiguity about the method the supreme court has selected to effectuate that policy. I, like the trial judge, see nothing harmful to the juvenile process in requiring that juveniles accused of DUI be dealt with with reasonable dispatch.

I am aware of the difficulty the state is faced with in trying to bring offenders to trial within the constraints of *Hinson*, and I am also aware that as Justice Holohan feared in his dissent in *Hinson*, the dismissal of prosecutions against drunk drivers may be counterproductive. As the majority points out, *Hinson* may even now be under reconsideration. *Hinson*, however, is too clear to be ignored. It is beyond our power to abandon it, and unless and until it is abandoned I see good reason to apply it to juvenile offenders.

The state argues that great flexibility is desirable in treating juvenile offenders and that the application of *Hinson* interferes with that flexibility. It points especially to the procedure provided for in A.R.S. sec-

tion 8–230.01 and Rule 2(b) and (c), Arizona Rules of Procedure for Juvenile Court, by which a juvenile probation officer may conduct an interview with a juvenile and his parents before deciding whether to file a delinquency petition, or, as an alternative, to adjust the complaint. Several factors undercut this argument.

First, the record shows that the vast majority of juveniles who are arrested for DUI are treated in municipal courts or justice courts and that referrals to the juvenile court for this offense, and review for adjustment, are rare.

Further, a strong argument can be made that any time consumed in the juvenile screening process provided for by the rules is delay occasioned by or on behalf of the defendant and is excludable under Rule 8.4 of the Rules of Criminal Procedure. Assuming such time is excludable, the application of *Hinson* in those few cases which are handled in the juvenile court will not interfere with the flexibility that is served by the screening and adjustment process.

More importantly, however, the juvenile judge in 1 CA–JV 90–007 expressly found nothing in the application of the *Hinson* speedy trial rule that was inimical to the juvenile process. To the contrary, it was his belief that delay in disposing of juvenile cases was harmful to juveniles and interfered with their rehabilitation.

### WAIVER OF HINSON

The state has an additional argument in Juvenile Number CR 90–007. It says that even if *Hinson* applies to juveniles, the juvenile in this case waived his right to object to a failure to bring him to trial within 150 days because his lawyer failed to inform the court of the impending expiration of the 150–day time limit.

The majority believes that the juvenile is not bound by his lawyer's conduct in failing to object, and that he, the juvenile, cannot waive his insistence on being tried within 150 days unless he personally made a knowing waiver of his right to be tried in a timely manner.

I do not agree that the juvenile must have made a knowing waiver of his right to be tried within the time limits of Rule 8. It is true that the Supreme Court of the United States in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), recognized that the *fundamental constitutional* right to a speedy trial "is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived." 92 S.Ct. at 2191. It went on to hold that it would not conclusively presume a waiver of a *fundamental* right from inaction, but that the failure to demand a speedy trial is one factor to take into account in determining whether the right to a speedy trial has been waived.

Rule 8 is narrower and more restrictive than the constitutional right to a speedy trial. *State v. Tucker,* 133 Ariz. 304, 308, 651 P.2d 359, 363 (1982). That being true, a violation of Rule 8 need not be a violation of any fundamental constitutional right. *Barker v. Wingo,* therefore, has no direct application to this case. Indeed, in *State v. Killian,* 118 Ariz. 408, 577 P.2d 259 (App. 1978), Division Two of this court has expressly held that Rule 8 does not grant a defendant a fundamental right and that counsel can waive its provisions on behalf of his client. I believe that *Killian,* which is directly on point, was correctly decided.

There are many other instances in which counsel's failure to act waives some important right of his client, even though the client may have no knowledge or comprehension of what is transpiring. For example, counsel's failure to object to inadmissible evidence waives the objection. *State v. Woratzeck,* 134 Ariz. 452, 657 P.2d 865 (1983); *State v. Lubetkin,* 78 Ariz. 91, 276 P.2d 520 (1954). A failure to object to testimony identifying the defendant as the perpetrator of the crime waives any right that the defendant might have to have the testimony stricken. *State v. Nevarez,* 108 Ariz. 414, 499 P.2d 709 (1972). Counsel's failure to request a specific jury instruction waives all but fundamental error for failure to properly instruct. *State v. Harris,* 151 Ariz. 236, 727 P.2d 14 (1986). Counsel's failure to object to proceeding without a court reporter waives a record of the

proceedings and results in the presumption that the missing record would support the action of the trial court. *State v. Zuck*, 134 Ariz. 509, 658 P.2d 162 (1982). Under Rule 16.1, Arizona Rules of Criminal Procedure, all pretrial motions not timely brought are precluded. For a general discussion of waiver of rights, see Dix, *Waiver as an Independent Aspect of Criminal Procedure: Some Comments on Professor Westen's Suggestion*, 1979 Ariz.St.L.J. 67; Spritzer, *Criminal Waiver, Procedural Default and the Burger Court*, 126 U.Pa. L.Rev. 473 (1978).

Having concluded that counsel's conduct *could* waive the juvenile's *Hinson* rights, I turn to the substance of the state's claim that counsel's conduct *did* waive those rights. The state says the juvenile's adjudication hearing was set beyond the 150-day time limit in the belief that *Hinson* and Rule 8 did not apply. It argues, citing *State v. Guerrero*, 159 Ariz. 568, 769 P.2d 1014 (1989), that if the juvenile intended to raise the *Hinson* issue, he should have informed the court at the time the hearing was set, and his acquiescence in the date set was a waiver of his right to an earlier trial. It points out that Rule 8.1(d) requires a defendant's attorney to advise the court of expiring time limits and that a refusal to dismiss is an appropriate sanction for a knowing failure to do so. *State v. Techy*, 135 Ariz. 81, 659 P.2d 40 (App. 1982).

The juvenile responds by pointing out that *Tucker* holds that where, as here, there were no intervening delays between arrest and the expiration of the time limit for trial, Rule 8.1, which requires counsel to notify the court of an expiring time limit, does not apply. He also points out that in *State v. Thurman*, 134 Ariz. 465, 657 P.2d 878 (App.1982), Division Two of this court, in refusing to find that a defendant waived his right to a speedy trial when he failed to object at arraignment to a trial date that was past the time limits set by Rule 8, said:

> In the recent case of *State v. Techy*, 135 Ariz. 81, 659 P.2d 40 ([App.] 1982), this court held that when the failure to advise the court is intentional, the time during which such conduct occurred may be ex-

cluded as an appropriate sanction. At this time we are reluctant to extend this rationale to a case such as this where at an arraignment the state, along with the court and the defendant, set a trial date past Rule 8 limits. Such an extension would, in effect, condone a trial postponement by stipulation and Rule 8.1 quoted above explicitly prohibits this.

134 Ariz. at 466–67, 657 P.2d at 879–80.

The most recent consideration of this problem is found in *Guerrero*. There, the defendant was arrested for a DUI on October 25, 1986. At a pretrial conference the judge scheduled trial for April 2, 1987, which was nine days past the 150-day deadline. The defense did not object to the trial date and proceeded to trial. The defendant was found guilty. On appeal, the defendant urged for the first time that he was entitled to a dismissal under *Hinson*. The court of appeals ruled that he had waived the speedy trial issue by failing to object. On petition for review, the supreme court agreed. In doing so it said:

> We recognize that Rule 8.2(e) states the speedy trial time limits 'may not be extended by stipulation or waiver....' This case is not, however, one of waiver in the sense that Rule 8.2(e) contemplates. Rule 8.2(e) prohibits a voluntary waiver of the strict 150-day time limit in an attempt to extend the DUI trial date. This prohibition serves the public's interest in promptly bringing the accused to trial. It is not a shield by which the accused may avoid trial and possible punishment by taking advantage of loopholes in the law or arithmetical errors.

> \*    \*    \*    \*    \*    \*

> We do not attempt to determine here what constitutes a timely objection to the Rule 8 speedy trial violation or potential violation. We simply assert that defendant cannot allow the 150-day limit to pass without objection, allow the trial to continue to verdict and sentence, and then, *for the first time,* raise the speedy trial issue and claim the need for reversal. Though defendant may indeed complain that he was not brought to trial

soon enough, he cannot first do so after verdict. *Guerrero,* 159 Ariz. at 570–71, 769 P.2d at 1016–17.

There is a tension between the Rule 8.1(d) requirement that an attorney advise the court of the impending expiration of the speedy trial time limit and the Rule 8.2(e) prohibition against an extension of time by stipulation. While I do not disagree with Division Two's observation in *Thurman* that parties cannot grant themselves an extension of time beyond the Rule 8 limits by failing to raise the issue, I believe that *Guerrero* requires a particularized inquiry into the motive of defendant's counsel in failing to notify the court that the 150–day limit would expire before the case was brought to trial. If counsel said nothing because he, and the state, in fact wanted a trial date beyond the time limit, the case was properly dismissed under *Hinson.* If, however, counsel did not advise the court of the impending expiration of the time limit because he wanted to let the time go by and then invoke *Hinson,* the motion to dismiss has been waived. In the latter case, in the words of *Guerrero,* counsel would be using *Hinson* as a shield to take advantage of a loophole in the law.

Here, the circumstances strongly suggest that the juvenile had every intention of asserting his right to dismissal under *Hinson* without advising the court that under the view of the law he planned to assert the time limit for trial was about to expire. Counsel for the juvenile says that the motion to dismiss was filed once it became ripe. I interpret this to mean that he was just waiting for the deadline to pass. Based on the record as it now stands, I conclude that the juvenile waived his motion to dismiss for a failure to comply with *Hinson.*

I realize that the record with respect to counsel's motive in not advising the court of the impending deadline has not been exhaustively developed. Since the young man who was charged with DUI in this case is no longer a juvenile, I would remand this case to the superior court for further proceedings. Should the state wish to proceed with prosecution, and should counsel for the juvenile wish to present evidence that his motive was not as I have assumed it to have been, or that he only discovered that he had a *Hinson* argument after the time limit for trial ran, he should move for an evidentiary hearing in the superior court on that issue. If the trial judge, applying the test that I have laid down, were to determine that the motion to dismiss was not waived, the judge should then enter another order of dismissal with prejudice.