889 P.2d 36

**JV–502820, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable James Hustad, Respondent Court,**

**STATE of Arizona, Real party in interest.**

No. 1 CA–SA 94–0255.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 26, 1995.

Dean W. Trebesch, Maricopa County Public Defender by David Katz, Deputy Public Defender, Ellen Edge Katz, Deputy Public Defender, Phoenix, for petitioner.

Jones, Skelton & Hochuli by William R. Jones, Jr., Kathleen L. Wieneke, David C. Lewis, Eileen J. Dennis, Phoenix, for respondent Court.

Richard M. Romley, Maricopa County Attorney's Office by Cindy L. Peterson, Deputy

County Atty., Mesa, for real party in interest.

## OPINION

NOYES, Judge.

This special action challenged the "courtesy hold" practice of the juvenile court in Maricopa County whereby Petitioner, a dependent child, was held in detention solely because Child Protective Services ("CPS") refused custody of her on the weekend. When this special action was filed, the juvenile court presiding judge promptly held meetings and issued memos to end any practice of holding a dependent child as a courtesy to CPS. The State reciprocated with assurances that CPS would in the future accept custody of its wards on weekends.

■ Respondents argue that the issue is moot because Petitioner has been released and the "courtesy hold" practice has been discontinued. Petitioner alleges that the practice continues, citing examples. Respondents deny that the practice continues, distinguishing the cited examples. We cannot decide the "continuation" dispute on the information presented. Although we trust that the practice has been discontinued, we accepted jurisdiction and granted relief with this opinion to follow because: the legal issue presented by the "courtesy hold" practice is substantial; memos from the presiding judge do not necessarily control how judges or commissioners rule in individual cases; and the pressures and problems associated with finding weekend shelter for dependent children will continue. The "courtesy hold" issue could arise again somewhere and evade review in the future as it has in the past because the detentions are brief. *See, e.g., JV–130549 v. Superior Court,* 178 Ariz. 211, 212, 871 P.2d 758, 759 (App.1994); *JV–111701 v. Superior Court,* 163 Ariz. 147, 149, 786 P.2d 998, 1000 (App.1989).

### Facts

Petitioner is a seventeen-year-old girl who had been adjudicated a dependent child, made a ward of the court, and committed to the care, custody, and control of the Arizona Department of Economic Security ("DES")

acting through its CPS division. At about 7:15 p.m. on Saturday, August 20, 1994, Petitioner was taken into custody by a police officer responding to a complaint about her allegedly threatening behavior and disorderly conduct. The officer tried to release Petitioner to CPS, but CPS refused to take her. At about 11:30 p.m., the officer delivered Petitioner to the Southeast Juvenile Detention Facility, where an intake worker attempted to release Petitioner to CPS, and CPS again refused to take her. By midnight, Petitioner's parents had refused to take her, and so had the sister with whom she had been living. Petitioner was put into detention.

On Sunday afternoon, Petitioner was taken before a juvenile court commissioner for a Detention Review Hearing pursuant to Rule 3(d), Rules of Procedure for Juvenile Court, which provides:

> No child shall be held in detention for more than 24 hours unless a petition alleging his or her delinquent conduct has been filed; and no child shall be held longer than 24 hours after the filing of said petition unless so ordered by the court after hearing.

Although the State had filed no delinquency petition in this case, the commissioner followed A.R.S. section 8–225(C) (Supp.1994) and appointed Deputy Public Defender David Katz to represent Petitioner, reasoning that there "has been an issue of contention for some period of time regarding these particular hearings, and I believe this matter [the legality of "courtesy holds"] needs to be resolved...." A Deputy County Attorney present at the hearing made no statements on the record and did not respond to Mr. Katz's statement that "[i]n this case, we have no verified affidavit, no delinquency charges are brought, and the County Attorney has requested essentially not to participate in this hearing, properly so, because she's not bringing any charges." When the court asked the probation officer for a recommendation, the officer responded, "When we contacted CPS to let them know that [Petitioner] had been brought in, they asked that we not release the juvenile to anyone but her

caseworker, and that they plan on coming to get her [Monday] morning."

Mr. Katz argued that the detention was illegal and that it "would not be appropriate to keep [Petitioner] locked up simply because of the fact that Child Protective Services is not in business on Saturday and Sunday." Advising the court that Petitioner was scheduled to begin classes at Mesa Community College on Monday morning, Mr. Katz moved for her immediate release to a group home supervisor who was present in court, who knew Petitioner, and who had agreed to accept custody of her until CPS would do so.

The court denied the motion for release, stating:

> I'm going to order the juvenile be detained until a suitable party from the Department of Economic Security comes to pick up [Petitioner], as she is a DES ward, and there is no party in authority from DES at this point in time to pick up the juvenile. I will direct the probation department to contact DES and inform them that I expect them to have her picked up no later than noon tomorrow, as they have previously agreed. *Again, for the record, the sole reason for Detention is the fact that there is no responsible party here from the State to take their ward.*

(Emphasis added.)

Petitioner was released to CPS at about 1:00 p.m. on Monday, August 22, after 37 hours of detention. This Petition for Special Action followed. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–120.21(A)(4) (1992).

### Analysis

■ Dependency is different from delinquency or incorrigibility. Generally speaking, delinquency involves actions by a child that would be criminal if done by an adult. *See* A.R.S. § 8–201(9) (Supp.1994). Incorrigibility involves a child who is a runaway or otherwise out of control. *See* A.R.S. § 8–201(13) (Supp.1994). Petitioner was not alleged to be either delinquent or incorrigible.

As relevant to this case, a dependent child is a child who has been adjudicated to be "[i]n need of proper and effective parental care and control and has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control." *See* A.R.S. §§ 8–201(11)(a) and 8–546(A)(5)(a) (Supp.1994). As we recently stated in *Matter of Juvenile Action No. JD–6236,* 178 Ariz. 449, 874 P.2d 1006 (App.1994), "Among the several ways the juvenile court may provide for a dependent child is to assign legal custody to an appropriate public agency. A.R.S. §§ 8–201(5) and 8–241(A)(1) (Supp. [1994] ). Such an agency is DES." *Id.* at 451, 874 P.2d at 1008.

In juvenile court, the word "detention" means "the temporary care of a child who requires secure custody in physically restricting facilities for the protection of the child or the community pending court disposition." A.R.S. § 8–201(12) (Supp.1994). As used in this Opinion, the words "detained" or "held" have the same "secure custody" connotation as "detention." Simply stated, there is no provision in the Arizona statutes for the juvenile court to order that a dependent child be detained. Children who are allegedly delinquent or incorrigible may be detained in certain circumstances, but not other children.

The statute that authorizes creation of juvenile detention centers, A.R.S. section 8–226(A), makes no provision for detention of dependent children. It provides:

> The board of supervisors shall maintain a detention center separate and apart from a jail or lockup in which adults are confined where children alleged to be *delinquent or incorrigible* and within the provisions of this article shall, when necessary before or after a hearing, be detained.

(Emphasis added.) The only reference to dependent children in A.R.S. section 8–226 is in subsection C, which provides:

> A child alleged to be *dependent* or incorrigible shall not be securely detained in a jail or lockup in which adults charged with or convicted of a crime are detained. A child may be nonsecurely detained if necessary to obtain the child's name, age, residence or other identifying information for up to six hours until arrangements for transpor-

tation to a shelter care facility, home or other appropriate place can be made.

(Emphasis added.)

There is statutory authorization for "temporary custody" of children, including allegedly dependent children, in certain situations following issuance of a court order or an arrest warrant. *See* A.R.S. § 8–223 (Supp. 1994). But the temporary custody procedures were not invoked here, and when they are invoked, a dependent child cannot be detained; the child must be placed in a "shelter care or a minimally secured facility." A.R.S. § 8–223(F) (Supp.1994). As previously stated, the relevant statute is A.R.S. section 8–226, and it does not permit detention of dependent children; it permits detention, in certain circumstances, of "children alleged to be delinquent or incorrigible."

The question of relief is moot as to Petitioner, who was released before the special action was filed. Because the legal issue presented is serious, and is capable of repetition and review-avoidance, the relief granted is our holding that children can be detained only if they are alleged to be delinquent or incorrigible, and only in compliance with Rule 3, Rules of Procedure for Juvenile Court following appointment or waiver of counsel pursuant to A.R.S. section 8–225(C).

KLEINSCHMIDT, P.J., and GARBARINO, J., concur.