484 P.2d 655

**ANONYMOUS, a juvenile, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona IN AND FOR the COUNTY OF PIMA, and the Honorable Ben C. Birdsall, Juvenile Judge thereof, Respondents.**

**No. 2 CA–CIV 989.**

Court of Appeals of Arizona, Division 2.

May 7, 1971.

Howard A. Kashman, Pima County Public Defender, Tucson, for petitioner.

Rose Silver, Pima County Atty. by Fred Nestor Belman, Sp. Deputy County Atty., Tucson, for respondents.

HOWARD, Judge.

The issue involved in this case is whether or not an affidavit of bias and prejudice filed pursuant to A.R.S. § 12–409 can work as an automatic disqualification of the juvenile court judge.

The juvenile in this case has been charged in the juvenile court with a homicide. Prior to the time set for an adjudicatory hearing the minor filed an affidavit alleging that he believed that a fair and impartial hearing could not be had in the matter by reason of the interest or prejudice of the juvenile court judge. The juvenile court judge refused to honor the affidavit. A petition for special action was then filed in this court asking that the juvenile court judge be prohibited from proceeding in this matter any further. We have stayed the proceedings in the juvenile court pending the determination of this matter.

The respondent justifies his refusal to honor the affidavit on the following grounds: (1) An affidavit of bias and prejudice is not provided for in the Juvenile Rules of Procedure promulgated by the Supreme Court in April of 1970. By inference, if such an affidavit was contemplated the Supreme Court would have provided for it; (2) an affidavit of bias and prejudice delays juvenile hearings which by their very nature should be speedy; (3) the superior court judge of Pima County collectively appoint a judge as juvenile judge and such judge should not be dis-

·qualified arbitrarily; (4) an arbitrary public defender or county attorney could subvert the function of the juvenile judge by filing an arbitrary affidavit in every case.

Although this is a case of first impression in the State of Arizona, the issue has been decided in the State of Missouri in the case of State ex rel. R. L. W. v. Billings, 451 S.W.2d 125 (Mo.1970) and in Montana in the case of State ex rel. Ostoj v. McClernan, 129 Mont. 160, 284 P.2d 252 (1955). Respondents have been unable to submit to us any cases to support their view. Practically all the reasons given by the juvenile court judge to justify his action were advanced in the case of State ex rel. R. L. W. v. Billings, supra, and rejected by the Supreme Court of Missouri.

We initially note that the affidavit of bias and prejudice filed by the minor refers to the criminal rule regarding such affidavits and not to A.R.S. § 12–409. We consider this error to be technical in nature, a matter of form and not of substance since in all other respects the affidavit complies with A.R.S. § 12–409. This statute provides in part as follows:

> "A. If either party to a *civil action in a superior court* files an affidavit alleging any of the grounds specified in subsection B., the judge shall at once transfer the action to another division of the court if there is more than one division, or shall request a judge of the superior court of another county to preside at the trial of the action.

B. Grounds which may be alleged as provided in subsection A for change of judge are:

\* \* \* \* \* \*

5. That the party filing the affidavit has cause to believe and does believe that on account of the bias, prejudice, or interest of the judge he cannot obtain a fair and impartial trial." (Emphasis added)

■ The first question is whether or not the proceedings in juvenile court constitute a "civil action." Although certain procedural requirements of due process which are applicable in criminal actions are equally applicable in juvenile delinquency hearings, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the proceedings are not criminal proceedings but are civil in nature.[1] We hold that for the purposes of filing an affidavit of bias and prejudice a juvenile delinquency proceeding is a "civil action."[2]

■ The next question is whether or not these proceedings were in "superior court." Article 6, § 1 of the Constitution of the State of Arizona provides that judicial power shall be vested in an integrated judicial department consisting of among other courts, a "superior court." We have previously held that there is but one superior court in the State of Arizona. Massengill v. Superior Court, 3 Ariz.App. 588, 416 P.2d 1009 (1966). Article 6, § 15 of

1. See Rules of Procedure for the Juvenile Court, Rule 7, 17 A.R.S. which states in part:

> \* \* \* \* \*
> " \* \* \* The conduct of the hearing shall be as informal as the requirements of due process and fairness permit, and shall proceed generally in a manner similar to the trial of *a civil action* before the court sitting without a jury, \* \* \*" (Emphasis added)
> \* \* \* \* \*

And see also A.R.S. § 8–207 which provides that the juvenile court proceedings shall not be deemed a conviction of crime or impose any civil disabilities ordi-

narily resulting from a conviction. And see Application of Johnson, 178 F.Supp. 155 (N.J.1957); In re Mack, 22 Ohio App.2d 201, 260 N.E.2d 619 (1970); Bible v. State, 254 N.E.2d 319 (Ind. 1970); State ex rel. R. L. W. v. Billings, supra.

2. In so holding, we do not determine whether or not juvenile delinquency proceedings are "civil actions" for the purpose of such things as discovery under the Civil Rules of Procedure. In this regard, see In re R. L., 3 Cal.App.3d 707, 83 Cal.Rptr. 81 (1970).

**504**

the Constitution of the State of Arizona does not provide that the *juvenile court* shall have exclusive jurisdiction in delinquency proceedings of children under the age of eighteen years but rather states:

"Section 15. The *superior court* shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. * * *" (Emphasis added)

Further, A.R.S. § 8–201(12), states that "juvenile court" means the juvenile division of the *superior court* when exercising its jurisdiction over children in any proceeding relating to delinquency, dependency or incorrigibility. From the foregoing it is abundantly clear that a juvenile proceeding is a proceeding in the superior court.

■ Under A.R.S. § 12–409 the mere filing of the affidavit in compliance with the statute ipso facto operates to bar the judge from proceeding any further in the matter other than transferring the matter to another judge. Itasca State Bank v. Superior Court, 8 Ariz.App. 279, 445 P.2d 555 (1968); Truck Equipment Co. of Arizona v. Vanlandingham, 103 Ariz. 402, 442 P.2d 849 (1968); Liston v. Butler, 4 Ariz.App. 460, 421 P.2d 542 (1966). This rule is also applicable under the Rules of Criminal Procedure, Rule 196, 17 A.R.S. State v. Stewart, 3 Ariz.App. 178, 412 P.2d 860 (1966). The affidavit of bias filed under such conditions cannot be questioned, imports verity, cannot be challenged and operates to disqualify. Hendrickson v. Superior Court, 85 Ariz. 10, 330 P.2d 507 (1958); Stephens v. Stephens, 17 Ariz. 306, 152 P. 164 (1915). While the respondent in this case does not contend that a minor must proceed in front of a biased and prejudiced juvenile court judge, the respondent questions the automatic disqualification feature of the affidavit of bias and prejudice when applied in juvenile court.

While other states require that the affidavit of bias and prejudice set forth the facts upon which the allegation of bias and prejudice is based and in still other jurisdictions even an affidavit setting forth the facts is not conclusive but must be further determined in a hearing, Arizona has the salutary rule making disqualification automatic. Thus, in this state it is not necessary to embarrass the judge by setting forth in detail the facts of bias, prejudice or interests which may disqualify him nor is it necessary for judge, litigant and attorney to involve themselves in an imbroglio which might result in everlasting bitterness on the part of the judge and the lawyer.

Since a litigant in a civil proceeding other than a juvenile proceeding, or in a criminal proceeding, need not end up in a distasteful encounter with the trial judge in order to remove him for bias and prejudice, we can conceive of no reason why a similar rule should not operate in relation to the juvenile court judge. As was well stated in the case of Stephens v. Stephens, supra:

"It is the policy of our system that every litigant, no matter in what form his application may be presented to the court, shall have his rights adjudicated by a judge who is not interested in the result. It cannot be doubted for an instant that it would be perversion of justice for a judge to sit in any proceeding in the event of which he has an interest, whether such interest arise from the fact that he is a party in interest, directly or indirectly, or that he is related to one or more of the parties, or that he has theretofore been an attorney or counselor for one of the parties to the action or proceeding. Nor should he be allowed to sit, when he is laboring under bias or prejudice toward one or more of the parties litigant." At 312, 152 p. at 166.

In the case of Application of Gault, supra, the United States Supreme Court recognized that very often the juvenile, because of the procedure employed in juvenile court, receives the worst of two

worlds. In other words, he is not accorded the procedural safeguards he would have in an adult proceeding and the procedures employed in juvenile court fail to achieve the fundamental principles of fair play inherent in the adult proceedings. To deny the petitioner the benefit of A.R.S. § 12–409 would be to consign him to limbo beyond the reach of both the civil and criminal rules merely because he is a juvenile. It would require him to present his evidence before a tribunal whose impartiality has been called into question yet which retains the power to commit him to the department of corrections until the department decides that he be given an absolute discharge. We cannot condone such a consequence.

We do not agree with the reasons stated by the respondent court for not honoring the affidavit. An affidavit of bias and prejudice does not operate to delay juvenile hearings, especially in the multiple-judge counties. In those counties in which there is but one judge, it is relatively easy to secure another judge with no more than a day's delay. The fact that the superior court judges of Pima County collectively appointed a judge to sit as juvenile judge does not work to put an imprimatur of "no bias or prejudice" upon the juvenile court judge and it is a non sequitur to state that because he was so selected, he cannot be automatically disqualified by filing an affidavit of bias and prejudice.

The fact that an arbitrary public defender or county attorney could subvert the function of the juvenile judge by filing an arbitrary affidavit in every case is equally spurious. An arbitrary public defender or county attorney could also subvert the function of the judge in a single-judge county in all criminal matters, yet an affidavit in such cases is recognized. State v. Stewart, supra.

Lastly, the fact that the affidavit is not provided for in the Juvenile Rules of Procedure promulgated by the Supreme Court does not by inference indicate that there is no such affidavit available. One can equally infer that the reason it was not included in the rules is because it was clear that under A.R.S. § 12–409 the affidavit was available.

The stay order previously entered by this court is made permanent and the respondent judge is prohibited from taking any further action in this case except to enter appropriate orders disqualifying himself herein and concurrently to call in another superior court judge to sit in the proceedings.

KRUCKER, C. J., and HATHAWAY, J., concur.