644 P.2d 1323

Gary Lee PIPKINS, Linda Lee Brown, Ricky Tyrone Lamar, Alvin Rushing, Pamela Griffin, Jerome Pipkins, Monica Lewis, and Lonnie Hayes, Petitioners,

v.

The Honorable Lloyd C. HELM, a Judge of the Superior Court in and for Cochise County, Respondent.

No. 2 CA–CIV 4423.

Court of Appeals of Arizona, Division 2.

May 19, 1982.

Kerley & DeFrancesco by Joseph J. De-Francesco, Sierra Vista, for petitioners.

Beverly Jenney, Cochise County Atty. by Dushan S. Vlahovich, Bisbee, for respondent.

OPINION

HATHAWAY, Judge.

The sole issue in this special action is whether the respondent judge is required to honor a notice of change of judge filed by each petitioner in pending juvenile court proceedings. Since we agree with petitioners[1] that their notices were timely filed under the circumstances here, we assume jurisdiction.

On April 29, 1982, the Cochise County Grand Jury returned indictments against petitioners accusing them of various offenses. At approximately 5 p. m. on April 30, a detention hearing was held by the respondent judge in juvenile court. At the conclusion of this hearing, the juveniles were ordered detained. The weekend inter-

---

1. Petitioners Hayes and Brown were not present at the detention hearing we shall subsequently discuss. Hayes' request for a change of judge was honored after the filing of this special action and therefore his request for relief is moot. Petitioner Brown's detention hearing was conducted by the respondent judge on April 29, without the notice required by rule

vened and on Monday morning, May 3, petitioners filed their respective notices of change of judge. On May 6, this special action was filed, challenging the respondent judge's failure to promptly reassign the pending juvenile proceedings to another judge. The following day the Cochise County Juvenile Department filed its objection to a change of judge, alleging that the juveniles had waived their right to a change of judge without cause because they had participated before the respondent judge in a contested matter. Rule 10.4(a), Rules of Criminal Procedure. We need not, however, decide whether a juvenile detention hearing constitutes a contested hearing for purposes of waiver, as we are of the opinion that the detention hearing was a nullity.

The record reflects the following. Earlier on April 30, arrangements had been made for the juveniles to turn themselves in at juvenile court. These arrangements had been agreed to by the law enforcement authorities and had been achieved through the efforts of Mr. DeFrancesco, a local attorney. The respondent judge, notwithstanding the fact that it was well known in the community that DeFrancesco was representing Miracle Valley residents, appointed another local attorney to represent the juveniles at the detention hearing, which was scheduled for late afternoon.

At the commencement of the hearing, the court asked the juveniles en masse whether they had an attorney to represent them and, if not, whether they desired to have an attorney appointed. The first juvenile responded that he did have an attorney whom he had hired, namely DeFrancesco. The court then indicated that if DeFrancesco had not been appointed or employed by somebody responsible, "somebody's going to have to be responsible for paying for the cost of representation." A spectator, who identified himself as Amos Thompson, then spoke up:

"MR. THOMPSON: I was told Joe DeFrancesco, the lawyer, was appointed.

THE COURT: He's not appointed to represent these.

MR. THOMPSON: What?

THE COURT: This is the Juvenile Court.

MR. THOMPSON: Well, he be the lawyer that represent all of them.

THE COURT: Who's going to pay for them, for him to represent them?

MR. THOMPSON: We'll pay for them.

THE COURT: Pardon me?

MR. THOMPSON: Our organization will pay for it."

The court then asked whether that was the situation with respect to each one of them, to which one juvenile responded in the affirmative. The court then said that it was going to appoint the local attorney who had been summoned in the meantime because the court was required to hold a hearing within 24 hours. During the brief testimony of a police officer as to probable cause, DeFrancesco entered the hearing room.

After some brief additional testimony from police officers, a brief recess was had during which the court-appointed attorney consulted with DeFrancesco. She subsequently called him as a witness and he testified to his participation in the arrangements for the juveniles to surrender themselves. He testified:

"I was under the impression that they would be detained and then the hearing would follow perhaps tomorrow. I was prepared to represent these individuals and it came as quite a surprise to me to arrive at the Juvenile Center from the Court and find the hearing going on and Counsel already being appointed for the children."

On cross-examination, DeFrancesco stated that it was his understanding from the

3(c)(2), Rules of Procedure for the Juvenile Court. The minute entry is silent as to waiver of counsel and whether the juvenile's parents, guardian, or custodian could not be found or failed to appear. No court reporter was

present and the only testimony was that of the juvenile and the juvenile probation officer. Under these circumstances, we include petitioner Brown in our disposition.

Miracle Valley residents that Pastor Thomas had asked him to represent the juveniles. The court then extensively examined DeFrancesco as to who was going to pay for his services and he said he had always been paid in full in the past.

At the conclusion of the hearing, the court-appointed attorney attempted to object to the en masse treatment of the seven juveniles, charged with different offenses, without consideration of their individual circumstances. She also pointed out that she had had no opportunity to talk to any of the juveniles herself or to adequately prepare for the hearing, and that DeFrancesco understood that he had been retained and was prepared to represent the juveniles at a detention hearing which he anticipated would take place the following day. This argument was rejected.

As noted above, the petitioners themselves indicated to the respondent judge that they were represented by DeFrancesco. There had been no notification to their parents or guardians as to the detention hearing. The court's concern with the 24-hour limitation of Rule 3(d), Rules of Procedure for Juvenile Courts, was unfounded as this rule itself excludes Saturdays and Sundays and therefore a Monday hearing would have been timely. Even though the respondent judge may not have been aware of the fact that DeFrancesco represented the Miracle Valley residents, the petitioners advised him before the detention hearing that they were represented by DeFrancesco. Due process of law, as it is expressed through the right-to-counsel provisions of the state and federal constitutions, comprehends a right to appear and defend with retained counsel of one's own choice. *People v. Byoune*, 65 Cal.2d 345, 54 Cal.Rptr. 749, 420 P.2d 221 (1966). *See also, Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Webster v. Jones*, 587 P.2d 528 (Utah 1978); *Irvin v. State*, 584 P.2d 1068 (Wyo.1978). The petitioners were denied a fundamental right when the hearing proceeded with a court-appointed attorney who had no opportunity to interview her clients or otherwise prepare for the hearing. Since the detention hearing was constitutionally infirm, it is a nullity and the notice of change of judge filed by each petitioner was timely.

The respondent judge is prohibited from proceeding further in these juvenile proceedings other than in accordance with Rule 10.5(a) of the Rules of Criminal Procedure. The opinion of this court will be our mandate.

HOWARD, C. J., and BIRDSALL, J., concur.