890 P.2d 632

JV–132324, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Chris Wotruba, a judge thereof, Respondent Judge,

STATE of Arizona, Real
Party in Interest.

JV–132334, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Chris Wotruba, a judge thereof, Respondent Judge,

STATE of Arizona, Real
Party in Interest.

Nos. 1 CA–SA 94–0301, 1 CA–SA 94–0302.

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 23, 1995.

Dean W. Trebesch, Maricopa County Public Defender by David Katz and Ellen Edge Katz, Deputy Public Defenders, Phoenix, for petitioners.

Richard M. Romley, Maricopa County Atty. by Gaye Cochran, Deputy County Atty., Phoenix, for real party in interest.

Grant Woods, Atty. Gen. by Thomas I. McClory, Asst. Atty. Gen., Phoenix, for respondent.

## OPINION

TOCI, Judge.

Two juveniles seek special action relief from a juvenile court commissioner's denial of their request for a change of commissioner.[1] Each juvenile's notice of change of commissioner, filed at each juvenile's first appearance in court at an advisory hearing, was denied by the commissioner as untimely.

Because untimeliness cannot bar the juveniles' right to a change of commissioner unless they had the opportunity to exercise that right, we are presented with the following issue: when did the juveniles first have the opportunity to exercise their right to a change of commissioner? The answer depends on whether the juvenile court effectively appointed the public defender as counsel for the juveniles as of the day delinquency petitions were filed against them. The juvenile court asserts that it made such an appointment by an administrative order containing a blanket appointment of the public defender to represent all juveniles appearing in delinquency proceedings.

We conclude that the juvenile court's administrative order containing a blanket appointment of the public defender's office at the commencement of every delinquency matter is void. Consequently, the juveniles were not represented by counsel and were unable to request a change of commissioner until commencement of the advisory hearings at which they first asserted their right to a

change of commissioner. The commissioner, therefore, erred in ruling that the notices of change of commissioner were untimely. We grant special action relief in this matter and confirm the juveniles' right to a change of the named commissioner.

## I. FACTS AND PROCEDURAL HISTORY

### A. Procedure for Appointment of Counsel, Notice of Hearing, and Notice of Assignment of Commissioner

In January of 1991, the Caseflow Management Task Group was created for the Juvenile Division of the Maricopa County Superior Court. The Task Group's purpose was to develop ways of improving court operations. One of the priorities of the Task Group was to hasten the processing of juvenile cases. See Ariz.R.P.Juv.Ct. ("Juvenile Rule") 6.1(a)(1) (effective March 1, 1992). The Task Group concluded that immediate appointment of a lawyer for a juvenile against whom a delinquency petition was filed would alleviate delay in the processing of juvenile cases. Consequently, the Task Group recommended that the presiding judge enter an administrative order providing for automatic blanket appointment of the public defender in all delinquency matters. The appointment was to be effective upon the filing of a petition for delinquency by the county attorney.

In accordance with the Task Group recommendation, Judge James E. McDougall, Presiding Judge for the Superior Court of Maricopa County, Juvenile Division, issued Administrative Order No. 93–09. That order found that (1) virtually every juvenile delinquency and incorrigibility case results in the appointment of counsel from the public defender's office and (2) the appointment of the public defender's office to represent a child upon the filing of the delinquency or incorrigibility petition had been approved by the Maricopa County public defender. On these findings, Judge McDougall ordered "that upon the filing of a Petition for Delinquency or Incorrigibility, the public defender is appointed as counsel of record to represent the

---

1. We have, by separate order, consolidated the two special actions.

juvenile in all delinquency and incorrigibility cases filed on or after August 9, 1993."

The exact purpose of this "automatic" appointment is subject to dispute. The order itself appears to appoint the public defender, without limitation, as counsel. Indeed, at various times, both the public defender and the county attorney have asserted that the "automatic" appointment gives the public defender full authority to proceed on behalf of the juvenile.[2]

At other times, however, both the public defender and the county attorney have asserted that the order merely constitutes an "unofficial" appointment of counsel. They have claimed that the order's purpose is to allow discovery to the public defender so that the public defender may review police documents to conduct an accelerated conflicts check. The order was only necessary, they have asserted, because the county attorney objected, on grounds of confidentiality, to releasing discovery materials to the public defender prior to appointment. Thus, when it suited their purpose, each has argued that "official" appointment of counsel takes place at the juvenile's first advisory hearing.

In any event, with the issuance of the administrative order, the juvenile court changed its procedure for calendaring advisory hearings. Under the new procedure, when the county attorney files petitions alleging delinquency or incorrigibility, copies are sent to the public defender's office, thus triggering the automatic appointment. The juvenile court then assigns such matters to a commissioner for an advisory hearing pursuant to Juvenile Rule 6. This assignment is made electronically, by entering it in an online computer database ("JOLTS"). JOLTS terminals are available in both the county attorney's office and the public defender's office, and it is theoretically possible for the public defender to search the data base each day and determine which commissioner has been assigned to a particular advisory hearing. Other than the computer entry, however, no notice is given to the public defender when new assignments are entered in the database, nor is that database available to private counsel.

Under the new procedures, a delayed "Notice to Appear" is sent to the juvenile, the juvenile's parents, the prosecutor, and the public defender, setting forth the time, date, and place of the advisory hearing. The notice does not, however, set forth the name of the judge or commissioner who will conduct the advisory hearing. In accordance with the Task Group recommendations, the notice is delayed to allow the public defender time to complete a conflicts check. If the public defender reports a conflict, a court administrator assigns the case for appointment of independent counsel.

## B. The Juveniles' Notice of Change of Commissioner

The facts of each of the two juvenile cases are virtually identical. In each case, the county attorney filed a delinquency petition and sent a copy to the public defender. Within a few days, each case was assigned both a commissioner and a hearing date by entry on the JOLTS database. Approximately two weeks before the scheduled hearing, a "Notice to Appear" was issued by the juvenile court, and a hard copy of the notice was sent to the public defender.

The scheduled advisory hearings were held approximately one month after the county attorney filed the petitions for delinquency. Moments before each hearing began, the public defender filed a "Notice of Change of Commissioner" with the court. As each advisory hearing began, the commissioner entered an order on the record that the public defender was appointed as counsel. Immediately following that "appointment," the court considered the public defender's request for a change of commissioner, referring to the notice that had just been filed. The commissioner then denied each request as untimely under Rule 42(f), Arizona Rules of Civil Pro-

---

2. Contrary to our rules of procedure, each party to this special action has made extensive reference in the appendices to their briefs to matters not in the record below. Ariz.R.P.Spec.Act. 7(e). Only the juveniles moved for leave to supplement the record. Because the additional materials do not raise triable issues of fact, *see* Ariz. R.P.Spec.Act. 4(e), we grant that motion and accept each of the parties' appendices as filed.

cedure. In each case, the public defender informed the commissioner that because the public defender had been "appointed" just moments earlier, the request for change of commissioner was timely. The county attorney took no position on the requests. Neither of the parties nor the commissioner made reference to the administrative order or the prior "automatic appointment."

Over the public defender's objection, the commissioner proceeded with each advisory hearing. The public defender then sought relief by filing these special actions. Subsequently, each case was assigned to a different commissioner for a disposition hearing.

## II. DISCUSSION

### A. Jurisdiction

■ Except for specified statutory grounds, this court's exercise of jurisdiction over petitions for special action is discretionary. *See* Ariz.R.P.Spec.Act. 7(d). Such jurisdiction may be exercised where the petitioner has no "equally plain, speedy, and adequate remedy by appeal." *Purcell v. Superior Court,* 172 Ariz. 166, 169, 835 P.2d 498, 501 (App.1992) (*quoting* Ariz. R.P.Spec.Act. 1). Here, the denial of a peremptory change of commissioner denies the juveniles an important procedural right but is not a final order otherwise subject to appeal. Thus, the exercise of special action jurisdiction is appropriate in this case. *See City of Sierra Vista v. Cochise Enters.,* 128 Ariz. 467, 468, 626 P.2d 1099, 1100 (App. 1979); *Lewis v. Kelliher,* 171 Ariz. 228, 228, 829 P.2d 1274, 1274 (App.1992).

■ Respondent county attorney argues that the issue in this case is moot. We disagree. A petition for relief will not be barred as moot where the threatened harm is both capable of repetition and capable of evading review. *In re King,* 150 Ariz. 206, 207, 722 P.2d 374, 375 (App.1986). Such is the case here. Although the juvenile cases at issue here have been assigned to another commissioner, the cases could be reassigned to the original commissioner at some future date, and the juveniles' right to a change of commissioner would be deemed waived. Thus, the juveniles have a continuing interest

in the outcome of this special action. Additionally, the problem complained of is an ongoing issue of court policy; we may exercise special action jurisdiction in such cases. *JV–111701 v. Superior Court,* 163 Ariz. 147, 149, 786 P.2d 998, 1000 (App.1989).

### B. The Right to a Change of Commissioner

■ It is established law that Ariz.Rev. Stat.Ann. ("A.R.S.") section 12–409 (1992) grants a juvenile in a delinquency proceeding the statutory right to an automatic change of judge. *Anonymous v. Superior Court,* 14 Ariz.App. 502, 504, 484 P.2d 655, 657 (1971). Because juvenile court proceedings are deemed superior court proceedings, this right extends to changes of juvenile hearing commissioners. *See* Ariz.R.Civ.P. 42(f)(1)(A). The procedure for a change of commissioner in juvenile court is controlled by Rule 42(f), Arizona Rules of Civil Procedure ("Civil Rule"). *Lewis,* 171 Ariz. at 229, 829 P.2d at 1275. Although Civil Rule 42(f) dispenses with the requirement under A.R.S. section 12–409 of an affidavit of bias and prejudice, the right protected under Civil Rule 42(f) is the same as that protected by the statutory provision. *King v. Superior Court,* 108 Ariz. 492, 494, 502 P.2d 529, 531 (1972).

Under Civil Rule 42(f)(1)(C), an automatic change of a juvenile commissioner is waived if notice of such change is not timely filed. Where assignment of a matter to a commissioner occurs within sixty days of the scheduled hearing, a notice of change of commissioner must meet two requirements to be timely. First, it must be filed within ten days after the commissioner is assigned to the matter. Second, it must be filed at least three days prior to the proceeding unless the party has less than five days notice of the proceeding. *See* Civil Rule 42(f)(1)(C).

The public defender argues that under this standard, Civil Rule 42(f)(1)(C) will never apply to an initial advisory hearing in juvenile court. In other words, because juveniles receive no notice of the assignment of a commissioner to their case, nor do they have counsel appointed prior to the advisory hearing, the opportunity to exercise their right to a peremptory change of commissioner within

the time limits in Civil Rule 42(f)(1)(C) will never arise. Accordingly, because an advisory hearing is similar to a criminal arraignment, the public defender urges us to adopt the time limits for exercise of a peremptory change of judge under Rule 10.2, Arizona Rules of Criminal Procedure.

We decline the invitation to invoke the criminal rules. The procedure for a peremptory change of judge in juvenile court derives from the fact that delinquency hearings are civil proceedings. *Anonymous,* 14 Ariz.App. at 503–04, 484 P.2d at 656–57. While certain rights in criminal proceedings may extend to delinquency proceedings as a matter of due process or equal protection, the procedural provision allowing ten days after arraignment in which to exercise a peremptory challenge is not so fundamental as to mandate its application in juvenile court. *See JV–111701,* 163 Ariz. at 150, 786 P.2d at 1001 (state need not treat juveniles in same manner as adults). We therefore conclude that any extension of juvenile court procedure in this matter should occur through the "orderly established manner [for] amending or adding to the rules of procedure." *Cain v. City Court of Tucson,* 135 Ariz. 96, 98, 659 P.2d 649, 651 (1983) (Hays, J., dissenting).

Nevertheless, it is established law that the right to a peremptory change of judge or commissioner cannot be waived under Civil Rule 42(f)(1)(C) unless the party has had the opportunity to exercise that right. See *Marsin v. Udall,* 78 Ariz. 309, 312, 279 P.2d 721, 723 (1955) (timeliness rule is subject to law of waiver, and one cannot waive right to change judge absent an opportunity to exercise it); *Newsom v. Superior Court,* 102 Ariz. 95, 96, 425 P.2d 422, 423 (1967) (whether a notice of change of commissioner is timely filed depends on the law of waiver). Here, the public defender argues that a juvenile unrepresented by counsel has no opportunity to file a notice of change of commissioner on his or her own behalf. Thus, according to the public defender, the juvenile's right to challenge the commissioner at the advisory hearing cannot be waived

by the juvenile's failure to file a notice of change of commissioner within the time allowed by Rule 42. We agree.

A juvenile has a right to counsel before proceeding in a delinquency hearing. *Application of Gault,* 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967); *see* A.R.S. § 8–225(A) (Supp.1994). Absent a finding by the court that a juvenile has made a knowing, intelligent, and voluntary waiver of this right, the juvenile cannot proceed on his own behalf. *See* A.R.S. § 8–225(C), (D); Juvenile Rule 6(c). Thus, unless a juvenile has made an appropriate waiver of the right to counsel, he is precluded from representing himself. *See* .*Gault,* 387 U.S. at 41–42, 87 S.Ct. at 1451–52. It follows that a juvenile cannot file a notice of change of commissioner on his own. Because there was no court-approved waiver of the right to counsel in the cases before us, these juveniles could not have exercised their right to change the commissioner.

More important, the juveniles had *no notice prior to the advisory hearings* of the name of the commissioner assigned to their cases. In the absence of this notice, there can be no waiver of the right to change the commissioner. *See Newsom,* 102 Ariz. at 96, 425 P.2d at 423. Here, the juveniles had no access to the JOLTS database to identify the commissioner assigned to their advisory hearings until the public defender was appointed to represent them.

Nevertheless, the county attorney and the juvenile court argue that the administrative order appointed the public defender counsel for the juveniles when the delinquency petitions were filed, and therefore the public defender had notice of the assignment of the commissioner through the entries in the JOLTS computer database.[3] The county attorney and the juvenile court implicitly conclude that because the public defender took *no action* on behalf of the juveniles to change the commissioner before the advisory hearing, under Rule 42 the juveniles have waived their right to a change of commissioner. To

---

3. Without deciding the issue, we assume for the purpose of argument that notice of assignment of the commissioner entered in the JOLTS database

was sufficient notice to the public defender's office.

decide this issue, we must determine whether the public defender was automatically appointed counsel for the juveniles at the time the delinquency petitions were filed. Thus, we begin our analysis on this point by examining the administrative order.

## C. Scope of the Administrative Order and Amenability to Review

 Before considering the validity of the administrative order, we address three preliminary questions. First, we examine the scope of the administrative order. The juveniles contend that the administrative order is not a blanket appointment of counsel, but rather is only an authorization for the public defender to conduct conflicts checks on upcoming juvenile cases. The juveniles assert that minutes from the Caseflow Task Group meeting that recommended the entry of the administrative order support this view. We disagree.

The order itself states, "upon the filing of a Petition for Delinquency or Incorrigibility, the public defender is appointed as counsel of record to represent the juvenile in all delinquency and incorrigibility cases filed on or after August 9, 1993." The order makes no reference to the conduct of conflicts checks. Also, although the Task Group's minutes indicate that the Group discussed the subject of conflicts checks, the minutes also indicate that the group was merely considering whether notice to juveniles of the public defender's appointment should be delayed until a conflicts check is completed.

Furthermore, the juvenile court has indicated in its response to this special action that the administrative order was intended to accomplish precisely what it purported to accomplish: automatic appointment of the public defender as counsel to each juvenile.[4] The juvenile court argues that the administrative order provides for "automatic appointment of the public defender" in juvenile cases. Based on that interpretation, the juvenile court concludes that the public defender was appointed in each of these cases as of the date the county attorney filed the petition for delinquency. Because of the incon-

sistent positions taken by both the county attorney and the public defender on this issue, we give more weight to the interpretation placed by the juvenile court on its own order. Consequently, the order must be viewed as an attempt to effect an "official" blanket appointment of the public defender to juvenile delinquency cases.

 Second, we reject the juvenile court's contention that this special action constitutes an impermissible collateral attack on the administrative order. Because the validity of the order is directly placed in issue by the timeliness of the request for change of commissioner, the issue is properly before us. See Arizona Bd. of Regents v. State ex rel. Pub. Safety Retirement Fund Manager Adm'r, 160 Ariz. 150, 156, 771 P.2d 880, 886 (App.1989) (A void administrative decision is subject to "collateral" attack); Cooper v. Commonwealth Title, 15 Ariz.App. 560, 564, 489 P.2d 1262, 1266 (1971) (void judgment susceptible to collateral attack).

Finally, we do not believe that the juvenile court's order is entitled to any special deference because it is related to ongoing efforts to reform our juvenile justice system. We are cognizant of the administrative objective of the juvenile court to facilitate speedier juvenile justice. At oral argument, however, both the public defender and the county attorney conceded that a challenge to the "automatic" appointment of the public defender in juvenile cases would not hinder this objective. In other words, the absence of an automatic appointment of the public defender in all juvenile cases will not otherwise interfere with the court's procedural mechanisms for meeting the requirements of the Speedy Juvenile Justice Rule, Juvenile Rule 6.1.

## D. Validity of the Administrative Order

 Because resolution of the juveniles' rights turns on a determination of the date counsel was appointed and the administrative order purports to appoint counsel on the day delinquency petitions are filed, we turn now to the validity of the administrative order. We conclude that the order is void because it

---

**4.** Because this special action implicates court policy, the juvenile court has filed a response

pursuant to *Hurles v. Superior Court,* 174 Ariz. 331, 849 P.2d 1 (App.1993).

conflicts with the Juvenile Rules promulgated by our supreme court.

 In Arizona, rulemaking power is vested exclusively in our supreme court. *Daou v. Harris,* 139 Ariz. 353, 357–58, 678 P.2d 934, 938–39 (1984); *Arizona Podiatry Ass'n v. Director of Ins.,* 101 Ariz. 544, 546, 422 P.2d 108, 110 (1966). Where local courts are authorized by the supreme court to adopt local rules, they nevertheless may not establish procedural rules contrary to those promulgated by the supreme court. *State ex rel. Corbin v. Superior Court,* 138 Ariz. 500, 502–03, 675 P.2d 1319, 1321–22 (1984). Furthermore, local rules in superior court require approval by a majority of the judges in the county and by the Chief Justice of the supreme court. Uniform R.Prac.Sup.Ct.Ariz. XIV.

Pursuant to its exclusive rulemaking authority, the supreme court has established Juvenile Rule 6 governing the order of proceeding in a juvenile advisory hearing. That rule states in part:

**Rule 6. Order of Proceeding**

. . . .

(b) At the appearance before the court, the child and his parents, guardian or custodian shall be advised of the right to be represented by counsel, including the right to be furnished counsel if the parties are indigent, and *the court shall determine whether the parties desire to be represented by counsel.*

(c) A child may waive counsel *if the court finds that his waiver is knowingly, intelligently and voluntarily given* in view of his age, education, apparent maturity and within the presence of his parents, guardian or custodian.... *Waiver of counsel shall be set out in writing or in the minutes of the court....*

(d) The court shall also advise the parties of the right of the child to remain silent through any and all phases of the hearing, the right to a hearing and the right to call witnesses in the child's behalf.

(e) *If counsel is requested, the court shall recess the hearing and order that counsel be secured for the parties....*

(Emphasis added.)

Juvenile Rule 6 makes it clear that appointment of counsel must occur on an individual basis. Specifically, the rule requires that, after informing a juvenile of the right to counsel, the court must make a finding whether the juvenile desires counsel or waives counsel. The court must also inform the juvenile of the right to remain silent, the right to a hearing, and the right to call witnesses. Only then, if counsel is requested, may the court order that counsel be secured for the juvenile.

 The Juvenile Rule 6 requirement of an individual appointment of counsel provides important protection for juveniles' rights. A juvenile's interest in appointment of counsel at an advisory hearing after being informed of his or her procedural rights derives from the constitutional right to due process. *See generally Gault,* 387 U.S. 1, 87 S.Ct. 1428. It is not merely the right to be represented by counsel that is protected; the right to waive counsel and the right to retain counsel of choice are constituent parts of the fundamental right to counsel established by the United States and Arizona Constitutions. *See Faretta v. California,* 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533–34, 45 L.Ed.2d 562 (1975); *Pipkins v. Helm,* 132 Ariz. 237, 239, 644 P.2d 1323, 1325 (App.1982).

A clear illustration of the necessity to carefully observe each of the procedural requirements of Juvenile Rule 6 is found in our decision in *Pipkins. See* 132 Ariz. at 238–39, 644 P.2d at 1324–25. There, eight youths had been brought before the juvenile court in Cochise County for a detention hearing. Although several of the juveniles indicated that they already had counsel, the court appointed an attorney to represent the juveniles *en masse* and proceeded with the detention hearing. The juveniles later sought to exercise their right to a change of judge, but the Cochise County Juvenile Department claimed that the juveniles had waived the right to a change of judge by participating in a contested hearing. We held, however, that the detention proceeding with appointed

counsel was a nullity. Finding that the procedure followed denied the juveniles their "right to appear and defend with retained counsel of . . . choice," we concluded that the juvenile court could not proceed based on the group assignment of court appointed counsel. *Id.* at 239, 644 P.2d at 1325.

Here, the automatic appointment of counsel in the administrative order conflicts with the procedural protections afforded by Juvenile Rule 6. Because the blanket appointment occurs prior to the initial hearing, a juvenile is not informed of his rights prior to appointment of counsel and is not given an opportunity to waive counsel or retain counsel of choice. Furthermore, the juvenile court binds the juveniles to the acts or omissions of their automatically-appointed counsel. Consequently, before being informed of their rights at the advisory hearing, the juveniles may be deemed to have waived important procedural rights—such as the right to change of commissioner at issue in the present cases—that the supreme court has bestowed upon them.

 At oral argument, the assistant attorney general, acting on behalf of the juvenile court, argued that the juvenile court would not enforce the administrative order against juveniles waiving counsel or appearing at the advisory hearing with counsel of choice. Thus, according to this argument, the administrative order would not affect the right to waive counsel or retain counsel of choice protected by Juvenile Rule 6. We conclude, however, that this does not cure the defect in the administrative order. Such practice would deny juveniles who accept appointed counsel the same procedural protections afforded to those juveniles who have retained counsel. Even if we assume solely for the purposes of argument that the proposed practice does not violate the equal protection or due process rights of those juveniles who accept appointed counsel, it nevertheless conflicts with the procedural rules adopted by the supreme court. The juvenile court has no authority to unilaterally adopt procedures that conflict with the rules established by the supreme court, even where the conflict does not affect the exercise of a fundamental right. *See, e.g., State*

*ex rel. Corbin,* 138 Ariz. at 502–03, 675 P.2d at 1321–22.

## III. CONCLUSION

 Because we hold that the administrative order purporting to automatically appoint the public defender in all juvenile delinquency matters is void, the public defender's appointment as counsel in the present cases was not effective until entered on the record at the advisory hearings. The notice of change of judge filed by the public defender after that appointment at the advisory hearing was therefore timely and must be honored.

JACOBSON, P.J., and CONTRERAS, J., concur.